## CAILLE v. KINGSLAND.

### Civ. No. 34800.

District Court of the United States for the District of Columbia.

Oct. 24, 1947.

922

Clarence M. Fisher, of Washington, D. C., for plaintiff.

W. W. Cochran and Joseph Schimmel, both of Washington, D. C., for defendant.

HOLTZOFF, Associate Justice.

This is an action against the Commissioner of Patents under Section 4915 of the Revised Statutes to direct him to issue to the plaintiff a patent on Application No. 421,366, filed on December 2, 1941 and rejected by the Commissioner. The application relates to decalcomanias, that is, strips of specially treated paper bearing designs which can be directly printed on or transferred to various articles.

Decalcomanias are of two kinds. Some are operated by means of water and others by means of heat—that is, in some the process of transferring the design is effectuated by the use of water, and in others by means of heat. The applicant's device relates to decalcomanias operated by means of heat. The alleged invention consists in coating the carrier strip, that is, the strip of paper on which the design is carried, with a coating or film of varnish soluble in alcohol. In his specification the applicant states that the distinguishing characteristic of his invention is that the carrier or base is provided with a coating or film of varnish soluble in alcohol. Two claims are involved, one of which is a specific claim covering a decalcomania including a carrier strip and a hard surface formed on said strip by a dried alcoholic solution of gum resin. The other claim is generic and covers a decalcomania including a carrier strip having a surface formed by a dried volatile solution of gum resin.

The Patent Office rejected the application on the ground that the advance made by the applicant over the prior art does not rise to the dignity of an invention. Counsel for the Commissioner of Patents relies on two prior patents cited by the Patent Office. The first is a patent to Wolff issued on December 9, 1873, and numbered 145,472. The Wolff patent discloses a decalcomania coated with a solution of some transparent resin such as white shellac dissolved in proof alcohol. Wolff states in his specification: "The most important part of my invention, and the one which makes it possible to apply the process, as herein described, with rapidity and success, is the alcoholic solution of lac or other resin, which is applied to the paper to prepare it to receive the impression from the stone."

In other words, Wolff, too, coats the carrier strip with a solution of resin and alcohol.

In one sense the two structures at first glance would seem to be practically the same. It is urged by the applicant, however, that the Wolff patent relates to decalcomanias operated by water, and that the principal function of the resin coating in the Wolff patent is different from the principal function performed by the corresponding coating in the applicant's device. We must bear in mind, however, that we are dealing with an application for a patent on a structure and not with an application for a patent on a process. The mere fact that an element common to both structures may be used for a somewhat different function does not necessarily create a patentable distinction between them. This proposition has been established in numerous cases. Perhaps one of the most lucid statements on this point is found in the opinion of the Supreme Court in Potts v. Creager, 155 U.S. 597, at page 608, 15 S. Ct. 194, 199, 39 L.Ed. 275, where the pertinent principles are summarized as follows: " * * * if the new use be so nearly analogous to the former one that the applicability of the device to its new use would occur to a person of ordinary mechanical skill, it is only a case of double use; but if the relations between them be remote, and

especially if the use of the old device produce a new result, it may at least involve an exercise of the inventive faculty."

Ordinarily the application of an old device to a new use is patentable only if the new use is in a different industry or different field or involves an entirely novel function. Consequently it does not seem to the Court that the mere fact that in the Wolff patent the resin coating is used principally to perform a function different from the principal function performed by a similar coating in the plaintiff's structure is sufficient to justify the issuance of a patent to the plaintiff.

It is further contended, however, that the applicant omits one of the features of Wolff's structure. He eliminates an adhesive solution between the base and the resin coating, which is found in Wolff's device. The reason for this difference is, however, that the Wolff patent covers a water operated decalcomania while the applicant's structure is operated by heat. The omission of a feature is not necessarily invention, especially when this omission is not expressly pointed out in the specification or claimed to be a carrying element of the combination.

The second patent relied upon by the defendant is the patent to Humphner issued on February 13, 1940, No. 2,190,405. The Humphner patent relates to heat-operated decalcomanias. It was held by the Board of Appeals of the Patent Office that in view of the teaching of Humphner it is not a patentable invention to omit the adhesive intermediate layer of the Wolff patent and to substitute the use of heat therefor. Moreover, one of the figures of the Humphner patent discloses a structure which is practically identical with the applicant's device, in that it depicts a carrier strip covered with a layer of rosin adhesive.

It may well be that the applicant's device operates more efficiently than decalcomanias of the prior art. As to this, the Court expresses no opinion. Increase of efficiency, of course, is not patentable.

Advances and changes that may be made as a result of mechanical skill by persons reasonably versed in the art are not patentable and are not rewarded with the 17-year monopoly that the patent law confers. Only a person who makes an advance that constitutes the product of inventive genius or the inventive faculty is entitled to the monopoly granted by the patent laws. Otherwise, we would find the patent laws acting as obstructions to progress rather than as incentives to invention. Manifestly, the distinction between an advance made as a result of mechanical skill and that which constitutes the product of inventive genius or inventive faculty is at times elusive. It has been aptly said by eminent authority that "delusive exactness is a source of fallacy throughout the law".[1] In the ultimate analysis the question is one of fact to be determined by the Court.

Many years ago the Supreme Court in a leading case very eloquently expressed the pertinent principles. In Atlantic Works v. Brady, 107 U.S. 192, at page 199, 2 S. Ct. 225, 231, 27 L.Ed. 438, Mr. Justice Bradley stated:

"The process of development in manufactures creates a constant demand for new appliances, which the skill of ordinary head-workmen and engineers is generally adequate to devise, and which, indeed, are the natural and proper outgrowth of such development. Each step forward prepares the way for the next, and each is usually taken by spontaneous trials and attempts in a hundred different places. To grant a single party a monopoly of every slight advance made, except where the exercise of invention somewhat above ordinary mechanical or engineering skill is distinctly shown, is unjust in principle and injurious in its consequences.

"The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every

---

[1] Mr. Justice Holmes in Truax v. Corrigan, 257 U.S. 312, 343, 42 S.Ct. 124, 66 L.Ed 254, 27 A.L.R. 375.

trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary process of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention." [2]

Judge Learned Hand, in the Second Circuit, has in this connection referred to the distinction between a person skilled in the art who is a routineer and one who exercises the inventive faculty. [3]

■ The expressions of the Supreme Court in Atlantic Works v. Brady have not been weakened through the years. On the contrary, the decisions of the Supreme Court during the past 25 years have raised the standards of patentability and, therefore, the principles laid down in Atlantic Works v. Brady are even more effective today than they have been in years past. [4] In the light of what has been said, the advance made by the plaintiff is in the realm of mechanical skill rather than in the field of invention.

■ Thus far, the matter has been considered as though it were before the court without any prior history. Actually, however, although an action under § 4915, R.S. involves a trial de novo, it is in effect a review of the administrative action of the Patent Office. The courts have held time and time again that the Administrative action of the Patent Office may not be overcome by a mere preponderance of evidence but only by evidence that is clear and convincing. This Court is not convinced that the Patent Office was in error, especially as, if it were free to reach its conclusion independently of the decision of the Patent Office, it would attain the same result.

Judgment for the defendant. Counsel will submit proposed findings of fact and conclusions of law.

---

[2] In Minnesota Mining & Mfg. Co. v. Coe, 69 App.D.C. 217, 200, 99 F.2d 986, 989, the court stated: "The use of mere skill to produce a desired improvement does not constitute invention. Nor is invention found in every slight advance which is made through the skill of those who, by reason of their employment, are aware of the constant demand of industry for new and improved appliances." See also L. Sonneborn Sons, Inc. v. Coe, 70 App.D.C. 97, 100, 104 F.2d 230.

[3] Kirsch Mfg. Co. v. Gould Merserau Co., Inc., 6 F.2d 793.

[4] In Magnaflux Corporation v. Coe., 78 App.D.C. 258, 259, 139 F.2d 531, 532, Mr. Justice Edgerton stated: "The frequency with which the Supreme Court, notwithstanding the presumption, has overruled the Patent Office on the issue of invention in infringement suits indicates that Patent Office standards of invention in the past have been too low. It is the more important that the presumption that the Patent Office is right when it rejects a claim for lack of invention be given the full weight to which it is entitled under the law. To interpret the presumption narrowly would prevent the Patent Office from raising its standards of invention to the present legal level."

The following decisions of the Supreme Court are illustrative of this doctrine: Electric Cable Joint Co. v. Brooklyn Edison, 292 U.S. 69, 54 S.Ct. 586, 78 L. Ed. 1131; Textile Machine Works v. Louis Hirsch Textile Machines, 302 U. S. 490, 58 S.Ct. 291, 82 L.Ed. 382; Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L. Ed. 1008; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Dow Chemical Co. v. Halliburton Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973; Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644; General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242, 66 S.Ct. 81, 90 L.Ed. 43.