## NATIONAL LEAD CO. v. KINGSLAND.
### Civil Action No. 35965.

District Court of the United States for the District of Columbia.

Jan. 12, 1948.

John H. Bruninga, of St. Louis, Mo., for plaintiff.

W. W. Cochran and H. S. Miller, both of Washington, D. C., for defendant.

HOLTZOFF, Justice

This is an action against the Commissioner of Patents under Section 4915 of the Revised Statutes, 35 U.S.C.A. § 63, for the purpose of obtaining a patent on an application filed by Irvin M. Archer on May 9, 1942, serial No. 442280.

The claims in issue relate to a process for dissolving petroleum emulsions. The original application contained apparatus claims, as well as process claims, but the former have been abandoned.

The alleged invention relates to a process of demulsification of emulsions composed of water and oil, which are produced by oil wells. In many oil wells, the product obtained is not pure oil, but a combination or an emulsion of water and oil. In order to separate the two, it is necessary to add a substance known as a demulsifying agent. Originally, the practice was to introduce the demulsifying agent at the surface of the ground, after the emulsion was obtained from the well.

Patent No. 208935, issued on August 3, 1937, to W. A. Oberlin, teaches an advanced step, consisting of transmitting a mixture of water and the demulsifying agent, or rather, the demulsifying agent diluted with water, to the bottom of the well, instead of adding it after the emulsion reaches the ground. Oberlin used water obtained from some outside source, although he indicated that brine could be employed instead of fresh water.

The applicant took an additional step. He proposed the use of water extracted from the emulsion that had previously been pumped from the well. In other words, the applicant proposed to separate the water from the emulsion that had been previously obtained, add it to the demulsifying agent and return it to the bottom of the well. Thus, the applicant instead of using water from some outside source, proposes to utilize the water that comes from the well as part of the emulsion.

The fact that there is some element of novelty in the plaintiff's conception, can

hardly be successfully denied. The only question is, whether the plaintiff's advance constitutes a patentable invention or is the product of mechanical skill, such as could be reasonably expected as a result of routine work done by a person skilled in the art.

We must start from the principle that since an action under Section 4915, although in form an action de novo, is, in effect, a method of reviewing the determination of the Patent Office, there is a presumption of regularity attaching to the decision of the administrative agency, which the plaintiff must overcome. This postulate is only a specific application of the general doctrine that the courts, in reviewing administrative action, commence with a presumption that the administrative action is correct, and may not be set aside unless it is clearly demonstrated to be erroneous.

It is sometimes said that as a matter of Patent Law, if there is a reasonable doubt as to whether invention exists, the doubt should be resolved in favor of the applicant for a patent. This is the rule of the Patent Office. There are older cases in this jurisdiction which enunciate the same doctrine as a guide for this Court. It is doubtful, however, whether this view still prevails.

The latest case decided by the United States Court of Appeals for the District of Columbia on this point is Magnaflux Corp. v. Coe, 78 U.S.App.D.C. 258, 139 F.2d 531, 532, in which the Court said:

"In a suit to obtain a patent the presumption of administrative and judicial correctness runs against the rejected claims, while in an infringement suit the presumption of administrative correctness runs in favor of the issued patent. The frequency with which the Supreme Court, notwithstanding the presumption, has overruled the Patent Office on the issue of invention in infringement suits indicates that Patent Office standards of invention in the past have been too low. It is the more important that the presumption that the Patent Office is right when it rejects a claim for lack of invention be given the full weight to which it is entitled under the law. To interpret the presumption narrowly would prevent the Patent Office from raising its standards of invention to the present legal level."

I had occasion to review the authorities on this point in the case of Caille v. Kingsland, D.C., 73 F.Supp. 921.

The question whether a specific advance rises to the dignity of a patentable invention, or is in the realm of a mechanical advance is, in its ultimate analysis, a question of fact. In determining this question of fact, however, the Court must bear in mind the presumption of regularity and correctness that attaches to the determination of the Patent Office.

In this case, the idea of using, as a source of water for the demulsifying agent, the water obtained from the well, is not new. The thought was suggested in a patent to Averill, numbered 1617737, and issued on February 15, 1927. In the specifications forming a part of that patent, the patentee says:

"The water that is added to the emulsion may be either fresh water or salt water. In most instances, salt water will be used because in an oil-treating plant, there is always a large quantity of salt water available, *which salt water is obtained from the bottom of the settling tank in which the emulsion is broken.*"

This statement seems to be a complete disclosure of the idea invoked by the applicant.

Again, it must be borne in mind that the claims in issue are claims solely for a process. If the applicant invented a new device or a new mechanism for the purpose of utilizing the water obtained from the emulsion, it is open to him to secure a patent on such an invention. All he asks here, however, is a patent on the idea— because a process, after all, is not much more than an idea—of substituting water secured from the emulsion for the water obtained from some outside source, as apparently was the customary practice heretofore.

In view of the foregoing considerations, the Court is of the opinion that the action of the Patent Office was correct and that the applicant has not made a patentable invention.

The complaint will be dismissed on the merits.

Counsel will submit proposed findings of fact and conclusions of law and form of judgment.