**WALSH STEVEDORING CO., Inc., et al. v. HENDERSON et al.**

No. 14130.

United States Court of Appeals
Fifth Circuit.

April 10, 1953.

Harry H. Riddick, Thomas A. Hamilton and Hamilton, Denniston, Butler & Riddick, Mobile, Ala., for appellants.

Herbert P. Miller, Atty., Dept. of Justice, Washington, D. C., T. J. White, Gulfport, Miss., Joseph E. Brown, U. S. Atty., Natchez, Miss., Edwin R. Holmes, Jr., Asst. U. S. Atty., Jackson, Miss., William S. Tyson, Solicitor of Labor, Ward E. Boote, Asst. Solicitor, and James E. Hughes, Attorneys United States Department of Labor, Wash., of counsel, for appellee Henderson.

Before HOLMES, BORAH and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

This appeal is from an order of the district court denying the petition of the ap-

pellants[1] to set aside and enjoin the enforcement of the order of the Deputy Commissioner of the Seventh Compensation District awarding compensation for the death of Junius Henderson. Upon its review, the trial Court concluded that the findings of the Deputy Commissioner were supported by the evidence in the record. Our consideration leads to the same conclusion.

Junius Henderson died on February 9th, 1950, as a result of injuries sustained on that date during the course of his employment as a longshoreman. A claim for compensation for his death was filed by each of two alleged widows. Testimony adduced upon the hearings of these claims disclosed much of the decedent's life history in the years intervening between 1923, when he, a young negro man reared on a plantation in Mississippi by his grandfather, married Valzora Cousins, until the date of his death in 1950, during which time he assumed marital relations with two other women. The last was with Leola Smith who, as Leola Henderson, was the contesting claimant in the present case with Valzora Henderson, the first wife. Compensation was awarded to Valzora, as a widow within the terms of the statute.[2] The Deputy Commissioner rejected Leola's claim. So far as the record discloses she has acquiesced in the finding.

Upon testimony, some of which was not controverted, and other, which, if credited, would support the findings, the following facts were found by the Deputy Commissioner. Junius and Valzora were married on November 11, 1923, and lived together until some time in 1928. One child, a son, was born of this marriage. In 1928, Junius left his wife and child in Memphis, Tennessee, and went to Gulfport, Mississippi. On June 1, 1930, Junius married Edna Simmons in Gulfport. This marriage was dissolved by divorce on January 26, 1934. In the early part of 1933, Junius, having separated from Edna, returned to Memphis and lived with Valzora until February,

1934. It does not appear that he told Valzora of his marriage to Edna, but he did tell the latter of his prior marriage and that he had not secured a divorce before marrying her. Junius was unemployed when he left Memphis in 1928 and, although he worked while he was in Gulfport, he did not secure employment when he returned to Memphis. He returned to Gulfport in February, 1934. Valzora did not offer to go with him and he did not ask her to go. She explained that he did not try to make a living for her and their child, but was going to Gulfport to gamble. She had a job in Memphis that she was sure of and was able to support herself and child. After Junius returned to Gulfport he sent her small sums of money on several occasions for about a year.

In 1936, Valzora moved to Chicago, Illinois, where she was residing at the time of the hearing. She did not see Junius again until 1946, when he and his third wife, Leola, whom he married on January 7, 1943, came to Chicago for a visit. He told her that he had remarried, that he had mended his ways, and that if he had not been "full of sin" they would still be living together. Junius did not write to Valzora after she moved to Chicago, but he wrote to their son and other of her relatives who resided in Chicago. Valzora was never divorced from Junius. She did not remarry or otherwise live with another man.

Junius and Leola Smith were married on January 7, 1943. They lived together until May, 1948, when Leola went to Chicago to attend school. After arriving in Chicago, Leola decided to abandon her plans to enroll in school and secured employment instead. She and Junius agreed that he would terminate his employment in Gulfport and join her in Chicago. However, he died before these plans were realized.

Appellants urge that the decedent's marriage to Leola subsequent to his marriage to Valzora is presumed to be valid and that

1. Pursuant to Section 21(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 921 (b).

2. 33 U.S.C.A. § 902(16).

consequently it should be presumed and found that his first marriage had been dissolved by divorce and that since the record fails to show that a divorce was not granted the evidence does not support the finding that Valzora is the surviving widow. Valzora testified that she had not divorced the decedent, and she had no knowledge of his having divorced her, although it may be inferred from the evidence that she would have known of such action on his part if he had instituted a divorce proceeding against her. Junius admittedly contracted marriage with Edna Simmons in 1930, after leaving Valzora in 1928. Edna procured a divorce in January, 1934, and in the meantime, in 1933, Junius had returned to Valzora and renewed cohabitation with her. While living with Edna, and prior to separation from her in 1933, he admittedly then had not divorced Valzora. This admitted evidence of disregard of his marital impediments seriously weakens, and indeed could be found under the circumstances here to destroy, the presumption that at a later date, and before his marriage to Leola, he secured a divorce from Valzora. With these facts admitted, there is little basis for a binding presumption that a subsequent third marriage was any more valid than the second, and the choice of permissible fact finding is enlarged. Inherent in the *prima facie* validity with which the law surrounds the subsequent marriage is the presumption of innocence of bigamy. When presumed innocence is overthrown by acknowledged guilt the shield of validity is pierced, and a fact finder is not required to ascribe to a third marriage a legality which admittedly has been absent from a second one. Belated correction of past errors and omissions, like death-bed repentance, is not unknown, but it furnishes an exception to the rule of human experience. When the command of conscience is long denied a callous usually develops.

■ In the circumstances of this case the trial Court properly refused to set aside the findings of the Deputy Commissioner that Junius never divorced Valzora and that she was his widow.

■ The appellants contend, however, that in any event there is no substantial evidence to support the finding, necessary to sustain the award here, that Valzora was living apart from Junius for justifiable cause and by reason of his desertion. We overrule this contention, for we think the circumstances and the evidence in the case authorized the finding which was made. When it is determined that the finding is so supported it should not be overturned merely because a permissible basis for a contrary finding may also appear. The primary duty of evaluating the testimony and drawing any reasonable inference therefrom rests upon the Deputy Commissioner, and the reviewing Court will not overturn his findings on questions of fact when they are supported by substantial evidence appearing from the record as a whole. If the testimony of Valzora be. credited, as the Deputy Commissioner was authorized to do and did, it is apparent that at the time of the separation in 1928, Valzora was the wage earner of the family and "was taking care of the house." The husband was in no wise providing for his family. He was going to Gulfport "to gamble". He never thereafter provided a home for the wife and child. Instead he entered a bigamous marriage. He only infrequently sent money to help support his lawful wife and child. He never requested her to come and make a home with him, and, indeed, could not very well have done so during the period of his cohabitation with Edna, nor for that matter, with Leola. In these circumstances the facts show that this is not at all the case of the husband changing the domicile and the wife refusing to move with him, with the consequence that she becomes a deserting spouse, so as to bring into play the principles considered applicable by appellants. The record is sufficient to support the finding that Junius deserted Valzora and that at the time of his death she was living apart from him for justifiable cause.

The trial Court did not err in refusing to set aside the award of compensation to Valzora Henderson as the widow of the decedent within the terms of the statute.

Judgment affirmed.