Richard R. COOK, Hal F. Fruth, John F. McNaughton and Radex Corporation, Plaintiffs,

v.

Robert C. WATSON, Commissioner of Patents, Defendant.

Civ. A. No. 2962-57.

United States District Court
District of Columbia.

Feb. 1, 1960.

James R. McKnight, Chicago, Ill., for plaintiffs.

S. Wm. Cochran, Washington, D. C., for defendant.

RICH, Judge.*

This action was brought under 35 U.S.C. § 145, pursuant to which the court has jurisdiction, to obtain a patent on plaintiffs' patent application Serial No. 336,578, filed February 12, 1953, entitled "Air Purifier." The individual plaintiffs are the applicants and Radex Corporation is their assignee. Plaintiff Cook is president of the corporation and was the sole witness to testify in this proceeding.

Plaintiffs ask the court to authorize the granting of a patent on claims 1, 2, 3, 4, 11, 12 and 13, all of the claims remaining in the application, no claim having been allowed. The claims were rejected as unpatentable over the prior art references which are:

| Walton | 2,070,073 | Feb. | 9, 1937 |
| French patent | 877,056 | Aug. | 24, 1942 |
| French patent | 963,621 | Jan. | 4, 1950 |
| Richardson | 2,604,183 | July | 22, 1952 |
| Penny | 2,181,767 | Nov. | 28, 1939 |

Penny, referred to in Richardson, was formally added by the board.

The invention is a device for removing airborne particles and droplets from the air by circulating it sequentially through a filter and an electrostatic precipitator. It is illustrated by an embodiment consisting of a rectangular sheet-metal cabinet open at the bottom and closed at the top by a perforated cover so that air can flow in at the bottom, upwardly through the casing, and out at the top. Across the bottom, through which the air enters, is a flat, so-called "mechanical-chemical filter" composed of a plurality of sheets of expanded paper or metal foil coated with a chemical preparation to catch and retain airborne particles. The chemical is apparently intended to remain moist since it is described as having limited hygroscopicity, water solubility, and low surface tension. It is said that it is preferably germicidal and fungicidal but these characteristics are not mentioned in the claims. Above this filter is an electric circulating fan and above the fan are the plates or dust-collecting sheets of an electrostatic precipitator. These too are coated with the same chemical preparation which, in this instance, may serve either or both of two functions. If the plates are made of normally non-conductive material such as kraft paper the solution makes them electrically conductive. It also has a kind of fly-paper action in trapping airborne particles, killing them if they are alive. If the plates are made of metal so that they are conductive, the former function is not important. Alternate plates are connected to a source of high voltage electricity to provide electrostatic precipitation of particles in a well-known manner.

Claim 1 is an example of the subject matter on which plaintiffs seek a patent. It reads:

"1. An air purifier comprising a mechanical-chemical filter adapted to remove heavier impurities from the air, an electrostatic collector adapted to remove lighter particles from the air and means for passing air through said filter and collector."

There is no substantial difference between the record in the Patent Office and the record made in this court. The only exhibits added to the Patent Office records consists of some literature on ozone,

* Judge, United States Court of Customs and Patent Appeals, sitting by designation.

having no bearing on the issue of patentability, and sales promotion literature of Radex Corporation, one item of which was before the Patent Office. Mr. Cook's brief testimony added nothing substantial to the arguments of counsel and established no facts tending in any way to show error on the part of the Patent Office in refusing a patent.

In actions of this kind the court starts with a presumption that the administrative action of the Patent Office was correct, that its rulings are entitled to considerable respect, and that they will not be set aside unless they are clearly demonstrated to be wrong. Daggett & Ramsdell, Inc. v. Marzall, D.C., 128 F. Supp. 906; National Lead Co. v. Kingsland, D.C., 74 F.Supp. 985. The Board of Appeals gave meticulous attention to the applicants' arguments for the patentability of the claims here on appeal and to the disclosures of the prior art references and our review thereof in the light of the same arguments presented here fails to show any clear error. We have already indicated that this court is not in possession of any relevant evidence that was not considered by the board.

It appears to us that, so far as the inventions pointed out by the claims are concerned, all the applicants have done is to combine two well-known types of filters in the same cabinet, incorporating therein certain details of mechanical construction and expedients for increasing filter efficiency which would be obvious to anyone of ordinary skill in the pertinent arts.

It is admitted that French patent No. 877,056 (Siemens) discloses the basic combination in one cabinet of what the applicants call a "mechanical filter" and an electrostatic precipitator. Walton shows a mechanical filter in which the filtering material is coated with oil to improve its dust catching ability. While the illustrative embodiment is an automotive filter for use at the intake of a carburetor and Mr. Cook said it could not be used for his purposes, the patent specifically states that it is not limited to such use and "is adapted for general use for ventilating and industrial purposes wherever it is desired to remove dust or other solid particles from air or other gases." Richardson discloses an electrostatic precipitator having an inexpensive, disposable dust collecting element made of paper or cardboard, which is normally non-conductive to electricity, and how it may be made conductive "by spraying metal particles upon the walls" or by "impregnating the walls with metal particles." The French patent No. 963,-621 (Herbelot) discloses a tubular type of electrostatic precipitator made with co-axial cylindrical members. It does not disclose coating any filtering surfaces with any "chemical" but it does state that the air leaving the precipitator may have the ozone removed from it by passing it "through a suitable catalyst such as activated carbon," which is certainly a "chemical" filter.

We are unable to see anything unobvious to men of ordinary skill in the air filtering art in causing air to pass sequentially through two different types of filters by means of a fan, or in placing a "chemical preparation" (a very broad term) on any filtering surface to aid in catching or retaining dust or to render a non-conductive surface electrically conductive where that is necessary.

Mr. Cook, at the trial, appeared to place considerable emphasis on the desirability of avoiding the production of ozone in the electrostatic precipitator part of his air purifier. While it is stated in the specification that one of the objects of the invention "is to provide an air purifier in which there is substantially no ionization or generation of nitrous oxide and ozone" nowhere does it explain how these allegedly undesirable matters are avoided. Claims 11, 12, and 13, added after final rejection for purposes of appeal, contain the clause "providing electric power with substantially no ionization" but this is inconsistent with the statement in the specification that ionization does take place and seemingly, too, with the statement in Radex Corporation literature that "Air contaminates become electrically charged as they pass through this ionization field, and are attracted and held to oppositely

charged plates." In any case it has nothing to do with the structure which the claims are supposed to define, it relates only to the manner of operating the device, and hence has no bearing on the question of patentability. If there is anything in the disclosed structure which inherently prevents the production of ozone, the specification does not describe what it is and it certainly is not pointed out in the claims.

Patentability cannot be predicated on the nature or composition of the "chemical preparation," which also seems to be important to the practical operation of plaintiffs' device. The claims merely call for "a chemical preparation" and the most they say about it is either that it facilitates the collection of impurities from the air or that it is electrically conductive. We agree with the Patent Office position that this claim limitation reads either on the oil coating on Walton's filtering material or the conductive coatings on the paper elements of Richardson.

Having carefully considered the record and the arguments, no error on the part of the Patent Office in rejecting the claims in suit has been found.

The complaint will be dismissed. Submit order.

