**T. SMITH & SON, INC.**

**v.**

**Honorable P. J. DONOVAN, Deputy Commissioner, United States Department of Labor, Bureau of Employees' Compensation, Seventh Compensation District, and Mrs. Fliecy G. Farina.**

**Civ. A. No. 13006.**

United States District Court
E. D. Louisiana,
New Orleans Division.
March 24, 1964.

District of Louisiana, New Orleans, La., Charles Donahue, Sol. of Labor, Alfred H. Myers, James Edward Hughes, Attys., U. S. Dept. of Labor, of counsel, for defendant, P. J. Donovan.

WEST, District Judge.

This suit arises under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, Title 33 U.S.C.A. § 901 et seq. Pascal Farina, Jr., husband of Mrs. Fliecy G. Farina, died on October 11, 1961, while in the employ of T. Smith & Son, Inc., a stevedoring company. He was, at the time of his death, in the course and scope of his employment as a longshoreman. Mrs. Farina made claim for compensation under the Longshoremen's and Harbor Workers' Compensation Act, and in connection therewith a detailed evidentiary hearing was conducted on September 10, 1962 and September 18, 1962 before Honorable P. J. Donovan, Deputy Commissioner. On December 5, 1962, the Deputy Commissioner issued and filed a Compensation Order, concluding that the decedent did suffer an injury, within the contemplation of the Act, and that the injury resulted in .the death of decedent on October 11, 1961, and that the injury and resulting death arose out of and in the course of employment. In accordance with these findings, respondent, T. Smith & Son, Inc., was ordered to pay petitioner death benefits as provided for in the Act.

T. Smith & Son, Inc., brings this suit to review the order of the Commissioner, contending the order is not in accordance with law and that it should therefore be rescinded and set aside by this Court.

The findings of fact of the Commissioner or Hearing Examiner must, of course, be accepted by this Court unless they are unsupported by substantial evidence on the record as a whole, and the burden is on the petitioner to show that the evidence adduced at the hearing does not support the Commissioner's findings of fact. Southern Stevedoring Co. v. Henderson, 175 F.2d

Virgil M. Wheeler, Jr., Sehrt, Boyle & Wheeler, New Orleans, La., for plaintiff.

Louis C. LaCour, U. S. Atty., Gene S. Palmisano, Asst. U. S. Atty., Eastern

863 (C.A.5 1949); National Lead Co. v. Kingsland, 74 F.Supp. 985 (D.C. 1948); Walsh Stevedoring Co. v. Henderson, 203 F.2d 501 (C.A.5 1953); Charleston Shipyards v. Lawson, 227 F. 2d 110 (C.A.4 1955). Furthermore, just as the Court may draw inferences and deductions from facts which it deems to have been proved, so may the Hearing Examiner draw such logical inferences as may be justified from facts otherwise proved by the evidence. O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951); Southern Stevedoring Co. v. Henderson, 175 F.2d 863 (C.A.5 1949); Liberty Mutual Insurance Co. v. Gray, 137 F.2d 926 (C.A. 9 1943).

After an extensive hearing, the Deputy Commissioner filed a Compensation Order, which reads, in pertinent part, as follows:

"That on the 11th day of October, 1961, Pascal Farina, Jr. hereinafter called the decedent, was in the employ of the employer above named, at New Orleans, in the State of Louisiana, in the Seventh Compensation District established under the provisions of the Longshoremen's and Harbor Workers' Compensation Act; that the liability of the employer for compensation under the said Act was insured by itself as a self-insurer;

"That on the said day the decedent herein, while performing service for the employer upon the navigable waters of the United States, sustained personal injury resulting in his death, while he was employed as a longshoreman aboard the S/S 'Brandanger', which was then afloat in the Mississippi River at New Orleans, in the State of Louisiana;

"That the decedent's occupational classification was that of a longshoreman; that primarily he drove a tractor on the wharf and at various times he, along with a number of co-workers, was assigned from his duties on the wharf, to assist in various work on vessels, such as rigging up and attaching hooks on guide lines to hatch covers;

"That in the year 1955 the decedent was examined by a physician and was found to be suffering from asthma, shortness of breath, and some evidence of bronchitis, and also chronic sinusitis; that from 1955 he was seen by his attending physician approximately once per month for such conditions and medication was furnished to him; that such conditions did not prevent him from performing the usual duties of his employment; that on June 1, 1960, he complained to his attending physician of pain in the chest with pain radiating down both arms and numbness in his fingers; that an electrocardiogram taken at that time showed enlargement of the left side of the heart; that such condition did not prevent him from performing the usual duties of his employment;

"That on the night of October 10, 1961 the decedent experienced pain in the chest at approximately 10:00 P.M. and this pain persisted but was not severe; that on the morning of October 11, 1961 he reported for work at 8:00, and from 8:00 to 10:00 A.M., he performed his regular duties as a tractor driver on the wharf; that during those 2 hours he conversed regularly with a co-worker and made no complaint of pain or discomfort; that at approximately 10:00 A.M. he was instructed by his foreman to go aboard the vessel S/S 'Brandanger' with a number of co-workers to perform certain work; that for approximately 30 minutes from 10:00 A.M. to 10:30 A.M., he assisted in rigging up, which included pulling a rope guide line attached to a boom, moving the boom with the guide line, a distance of about 4 to 5 feet in order to place the boom in location, and then tightening up the guide line; that he also assisted in placing hooks on hatch covers which were moved by winch-

es, and then removing the hooks; that at approximately 10:30 A.M. and immediately after completing his work aboard the vessel, the decedent left the vessel, walked to the wharf, and laid down on a wagon; that within 3 to 4 minutes later a co-worker who had just left the vessel, observed the decedent on the wagon, summoned the foreman, and the decedent was removed to a hospital where he died at 12:30 P.M. the same day; that the decedent performed no work after leaving the vessel and until he was found by his co-worker on the wagon on the wharf;

"That prior to October 11, 1961 the decedent had advanced coronary arteriosclerosis for some undetermined period and this condition did not prevent him from performing the usual duties of his employment; that the work performed by the decedent aboard the vessel on October 11, 1961 would not be considered strenuous work for a person of normal health; that at the time he went aboard the vessel at approximately 10:00 A.M. he had made no complaint; that the work performed by him between 10:00 A.M. and 10:30 A.M. aboard the vessel accelerated his pre-existing condition and caused acute coronary thrombosis which resulted in death from an anterior myocardial infarction; that said injury resulted in death on October 11, 1961; that the injury and resulting death arose out of and in the course of the employment; * * *.

"AWARD:

"That the employer, T. Smith & Son, Inc., 209 Gravier Street, New Orleans 12, Louisiana, shall pay death benefits as follows:

"To Mrs. Fliecy G. Farina, surviving wife of the decedent, at the rate of $36.75 per week for death benefits that have accrued to her for the period October 12, 1961 to December 5, 1962, inclusive, 60 weeks, in the sum of $2205.00, which sum shall be paid forthwith, and beginning December 6, 1962, shall continue payments at the rate of $36.75 per week, payable in bi-weekly installments, subject to the limitations of the Act or until the further order of the Deputy Commissioner. * * "

 This Court has now reviewed the entire record in this matter, and is of the opinion that there is ample and substantial evidence contained in the record to justify the Deputy Commissioner's conclusions, and thus the ruling of the Deputy Commissioner must be affirmed. Judgment will be entered accordingly.