**The CARBORUNDUM COMPANY,**
**Plaintiff-Appellant,**

v.

**NATIONAL TEA COMPANY, Defendant-Appellee.**

**No. 12286.**

United States Court of Appeals
Seventh Circuit.

Dec. 29, 1958.

---

278

William H. Webb, Pittsburgh, Pa., Edward C. Grelle, Chicago, Ill., Webb, Mackey & Burden, Pittsburgh, Pa., Brown, Jackson, Boettcher & Dienner, Chicago, Ill., of counsel, for appellant.

Harry C. Alberts, Chicago, Ill., Richard Blum, New York City, Mock & Blum, New York City, of counsel, for appellee.

Before DUFFY, Chief Judge, and SCHNACKENBERG and HASTINGS, Circuit Judges.

DUFFY, Chief Judge.

Plaintiff claims infringement of Eastman Patent No. 2,650,158, dated August 25, 1953, which relates to scouring or scrubbing implements. Defendant is a large vendor of the accused scrubbing implements which are manufactured by Scrubbee Products Corporation. Although not a formal party, Scrubbee has conducted the defense to this suit and has been in complete control thereof. Except in one minor respect, the trial court adopted defendant's proposed findings. and conclusions. The Court dismissed the complaint "because of invalidity of Eastman Patent No. 2,650,158 and non-infringement thereof."

The patent in suit relates to scrubbing pads which are suitable for general household scouring and cleaning purposes, such as the scouring and cleaning of pots and pans and other kitchen utensils. The pad is composed of materials which are resistant to deterioration by hot water up to 180° F., soap, detergents, fats. and grease, such as are found in dishwater. It features a pad or supporting layer of elastic, compressible, flexible and pliable material provided with a surface layer of comminuted abrasive material embedded in an adhesive which secures. the abrasive layer to the backing. This. backing pad or layer is specified as "foam rubber" in both the specifications and the claims. Claims I and III are typical and. and appear in the margin.[1]

[1.] "1. A scouring implement comprising a foam rubber backing and a single layer of abrasive granules substantially one grit size in thickness adhesively secured thereto by means of a water insoluble adhesive having permanent flexibility and elongation, said adhesive comprising a blend of rubber and thermosetting resin, said foam rubber backing being of sufficient thickness to impart compressibility and handling strength to the article.

"3. A scouring implement comprising a foam rubber backing of sufficient thickness to impart compressibility and handling strength to the article and a single layer of abrasive granules substantially one grit size in thickness adhesively secured thereto by means of a water-insoluble adhesive comprising a blend of rubber and a phenol aldehyde resinous. condensation product."

The patented scrubbing implements are manufactured under a license to Rubber-Scrubber Corporation. Carborundum and Rubber-Scrubber developed a new business based on the patented pad. An officer of Scrubbee Products Corporation which manufactures the accused pad, testified that the thing that impelled him to get into the present business of his corporation was coming in contact with the patented product manufactured by Rubber-Scrubber Corporation. Others, like Scrubbee, started the manufacture of similar pads. Plaintiff claims that the only infringer of consequence other than Scrubbee has now taken a license.

The patent points out that the object of the invention is to provide an improved scouring implement avoiding the disadvantages of the prior art scouring implements. The patent states: "The abrasive article or scouring implement of this invention differs from articles heretofore used in that the entire article, including the base or supporting layer and the superposed adhesive layer containing abrasive material, is elastic, flexible, compressible and pliable and also resistant to deterioration by hot water, soap, detergents * * *."

Foam rubber is defined in the patent as encompassing not only foam rubber made from a natural rubber latex, but also from rubber materials composed of or containing the various synthetic rubber latices in a foamed condition, and other types of synthetic rubbers or elastomers either alone or blended in various proportions with one another or with a natural rubber latex.

■ The District Court concluded the patent in suit is void under 35 U.S.C.A. §§ 102, 103. In another conclusion of law, the Court held: "The Eastman patent is void over the prior art, if its scope covers the accused pad." We hold that especially in view of the file wrapper history, the claims of the patent in suit must be narrowly construed and as thus construed, such claims are valid.

■■ The big question in this suit is whether the accused pad infringes. To understand the restricted scope of the claims, a reference to the file wrapper history is important and enlightening. The application for the patent in suit had a somewhat rough road to travel before the patent was issued.

Eastman filed an application in 1947 in which he made no distinction between "foam rubber" and "sponge rubber" as suitable material for making the pad or backing layer. He also attempted to include various types of adhesive and the use of a plurality of layers of abrasive particles. The claims in the 1947 application were rejected. A second application was filed by Eastman in 1949 which also was rejected on the prior art.

A third application was filed in 1950. Eastman disclaimed sponge rubber and limited his disclosure to foam rubber. In the first office letter dated February 21, 1951, the examiner rejected the eight original claims upon prior patents to Wooddell and Sawyer, and also cited a patent to Carter to show the use of foam rubber in a scouring pad. Eastman then cancelled original claims 1, 2, 6 and 7 and inserted the word "single" in each of the four remaining claims so as to read " * * * a single layer of abrasive grains secured to the face of the foam rubber * * * ". The examiner again rejected the restricted claims and on March 20, 1952, Eastman further limited these four claims by inserting "substantially one grit size in thickness," and also inserting the word "thermosetting" in original claims 3, 4 and 8. In the argument on this amendment, Eastman represented to the Patent Office "Firstly, the claims now specify that the adhesive is a resin-modified rubber base adhesive in which the resin is a thermosetting resin. Secondly, the claims now specify that the abrasive layer which is adhesively secured to the foam rubber backing is 'substantially one grit size in thickness.'" Thereafter the application was allowed.

The District Court found non-infringement on three principal grounds: 1) polyurethane is not an equivalent for foam rubber; 2) the accused pads are constructed with several superposed layers of abrasive granules which is not the

same or the equivalent of the single layer of the Eastman patent, and 3) the resin ingredient of the adhesive is not thermosetting and is not an equivalent for the resin ingredient of Eastman's claims.

Plaintiff argues that the backing in the accused pads is not just "polyurethane" but is a "polyurethane foam" which plaintiff says is foam rubber or at least the equivalent thereof. However, the record contains sufficient evidence to sustain the Court's finding that polyurethane is not an equivalent for foam rubber. The fact that polyurethane was an elastomer is without significance. Professor Bruins testified that sponge rubber which Eastman expressly excluded, is also an elastomer.

A very close question is presented as to whether the accused pads have a single layer of abrasive granules, substantially one grit size in thickness. The record contains considerable evidence to prove that the agreed specimens of the accused pads infringe in this respect. However, there is substantial evidence to the contrary, and the District Court found that in the accused pads there " * * * were several superposed layers of abrasive granules which is not the equivalent for the single flat layer of abrasive of the Eastman patent."

It is understandable why such conflicting evidence is present. On oral argument we were shown the abrasive used. The grains are so fine that a small quantity of this abrasive has the appearance and feel of dust. Furthermore, in making the pads, the abrasive is affixed to a material, the cellular surface of which is rough and uneven. Examinations of various specimens were made with powerful microscopes, and different conclusions were reached. The finding on this point could have been either way. Under the circumstances we must approve the trial court's findings that the accused pad does not have a single layer of abrasive granules, substantially one grit size in thickness.

A third point on which the District Court based its findings and conclusions of non-infringement is that the resin ingredient of the adhesive in the accused pad is not thermosetting. The evidence shows that while a thermo plastic material will melt when exposed to heat, a thermoset material will not.

Each of the four adhesive formulas of the Eastman patent requires the use of heat in order to result in the thermoset condition. An expert witness testified that the entire disclosure of the Eastman patent required the use of heat, and that the purpose of using the thermosetting resin which is mentioned in the Eastman claims, is to convert it to the thermoset condition by the heating step. The trial court specifically found that by means of the heating step described in the Eastman patent, the original thermosetting resin is chemically changed to the thermoset condition.

In making the accused pad, the adhesive solution is mixed with abrasive granules at ordinary room temperature of 70° to 75°. The solvent of the solution is evaporated at the same temperature which leaves a dry surface layer of adhesive and abrasive granules. Due to the absence of an application of heat, the adhesive in the finished pad remains non-thermoset. We think the District Court was correct in holding non-infringement in this respect.

Because infringement of the claims of the patent in suit was not established, the judgment below dismissing the complaint is

Affirmed.