51 CCPA

### Application of Karl Hermann HACKLANDER.

### Patent Appeal No. 7088.

United States Court of Customs and Patent Appeals.

March 12, 1964.

Jacobi & Davidson, Samuel L. Davidson, Herbert J. Jacobi, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (L. F. Parker, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

SMITH, Judge.

Appellant's invention, as described in his specification and claimed in appealed claims 55–61 of his application,[1] relates to a reinforced sheet or slab of expanded polyurethane. As appellant points out in his specification, "One drawback of expanded plastics is that when they are resilient and very elastic they are subject to being easily torn." The issue on this appeal is whether appellant's claimed solution to the problem of tearing of such plastics is patentable.

As appellant states in his specification,

"The invention consists in expanded plastic incorporating an open textured fabric which in the direction of stretch of the fabric *allows an initial freedom of movement* and thereafter prevents further stretch and consequent tearing of the material." (Emphasis added.)

It is this "initial freedom of movement" which appellant considers to be the essence of his invention. In use, the net structure is said to collapse freely during the initial stretching of the foam; however, after a certain amount of stretch, depending upon the characteristics of the net, the fabric then resists further stretching and prevents the strain from exceeding the elastic limit of the foam.

---

1. Serial No. 595,552, filed July 2, 1956, for "Expanded Plastic." The appeal originally included claims 52–64; however, at the oral argument counsel for appellant abandoned the appeal as to all claims except 55–61.

This feature is said to permit the use of appellant's reinforced foam in certain applications (e. g., the upholstery industry) where an initial stretch is desirable or necessary, but where a limit is required to prevent tearing of the plastic foam.

Claim 55 is the broadest of the appealed claims and reads as follows:

> "A resilient sheet or slab of expanded polyurethane having a reinforcing fabric of the structure of a net pressed into the surface of the sheet or slab while in an adhesive condition."

The remaining claims specifically define the "fabric" of claim 55 as a "hair net" (cl. 58) or "lace" (cl. 59) or a "knotted fishing net" (cl. 60), or specifically limit the shape of the apertures in the net structure to "pentagons" (cl. 57) or "squares" (cl. 61) or those having "more than four sides" (cl. 56).

The Board of Appeals affirmed the examiner's rejection of all the claims as unpatentable over the following references:

| | | |
|---|---|---|
| Kayser | 375,073 | Dec. 20, 1887 |
| Mastin et al. | 2,625,535 | Jan. 13, 1953 |
| Scholl | 2,787,266 | Apr. 2, 1957 |
| British Patent | 501,882 | Mar. 7, 1939 |

The basic reference, Scholl, discloses a stretchable cushion material, with respect to which the specification states:

> "Still another object of the invention resides in the provision of a stretchable cushioning material comprising a fabric stretchable in all directions, with a sheet of foam latex firmly secured to one face of the fabric, the foam latex having greater stretchability than the fabric, and being more easily rupturable by overstretching than the fabric, whereby the fabric limits the stretch of the foam latex to a safe amount."

The specification further indicates that the material is particularly useful as an elastic surgical bandage, but that it will have other uses apparent to one skilled in the art.

The British patent relates to a laminated elastic fabric in which one or more sheets of an elastic rubber such as latex is combined with one or more layers of a knitted or loosely woven fabric with a rubber adhesive. The specification indicates that the loosely woven fabric is cemented to the rubber sheet while the rubber is in a stretched position, so that when the rubber is allowed to contract to its normal size and shape, the loosely woven fabric will be in a "super-relaxed" configuration.

Kayser shows an elastic fabric in which a backing of India rubber or equivalent elastic material is cemented to "a textile fabric so knitted, woven, or otherwise made as to be capable of extension in one or more directions." Jersey cloth is given as an example of such a fabric.

Mastin et al. discloses elastomeric diisocyanate modified polyesters, including polyurethane, and points out that such materials are useful in those applications where natural rubber or rubber-like materials are used.

In deciding whether appellant's invention is patentable, we are required, under 35 U.S.C. § 103, to determine whether the claimed differences over the prior art are such that appellant's subject matter as a whole would have been obvious to one of ordinary skill in the art at the time the invention was made. Appellant contends, and we agree, that the differences are 1) none of the references which show stretchable fabrics or cushion materials discloses the use of polyurethane foam, and 2) none of the references specifically calls for the use of a "net."

The examiner stated in his answer:

> " * * * Scholl teaches the reinforcing of foam latex with a stretchable fabric. Kayser and the British patent teach of reinforcing of rubber sheets with various arrangements of strands and open mesh fabrics. Mastin et al teaches the equivalence of rubber and polyurethane. It would not require invention to employ the reinforcing fabrics of Kayser or the British patent in place of the reinforcing fabric

of Scholl. It would also not require invention to employ polyurethane in place of foamed rubber latex of Scholl as the equivalence of rubber and polyurethane is taught by Mastin et al."

By substituting in the above statement the statutory language of 35 U.S.C. § 103 for the examiner's language ("it would not require invention") we can accept this statement as determinative of the issue herein. Although the appealed claims specify particular types of net structure or aperture conformation, there is nothing in the record which indicates that the use of these types would not have been obvious to one of ordinary skill in this art at the time appellant made his invention. The same is true as to the size of the apertures or net openings. The claims call for a "fabric of the structure of a net." It is clear that the "loosely woven" fabric of the British patent approximates such a structure, and would provide an initial freedom of movement. It is doubtful if such a fabric could properly be called a "knotted fishing net" or "lace," but this does not seem to be relevant to the question of obviousness. We agree with the solicitor's statement in his brief that

"* * * all fabrics obviously have a certain amount of free stretch depending upon their weave. If free stretch is desired in a fabric use, the kind of textile used in practice would, it is submitted, depend upon the amount of stretch desired. That property could easily be determined by experiment.

"Under these circumstances, it would seem clear that patentability of appealed claims 56 to 61, inclusive, cannot be predicated on either the specific type of textile used, i. e., hair net, fishing net, lace, etc.; the specific configuration of the apertures in that textile fabric i. e. pentagon shaped, square, etc. or the free stretch of the fabric. * * * "

Appellant argues that rubber and polyurethane foam are not equivalents, and cites as authority for this proposition Carborundum Co. v. National Tea Co., 262 F.2d 277, (7th Cir. 1958), a patent infringement case. The use of rubber involved there, however, was as a backing for an abrasive pad, and we think the court's statement that polyurethane is not an equivalent for foam rubber is necessarily limited by the well recognized doctrine of equivalency to the particular application of those materials in that case. As such, it has no apparent relevance to the issue here. We have indicated above that Mastin et al. discloses that polyurethane may be an effective substitute for rubber in many applications. In view of this disclosure, we think that one of ordinary skill in this art would have considered it obvious, at the time appellant's asserted invention was made, that fabrics employed as mechanical reinforcements for rubber were similarly applicable to polyurethane foam.

The decision of the board is affirmed.

Affirmed.