## WIREBOUNDS PATENTS CO. et al. v. H. R. GIBBONS BOX CO.

Circuit Court of Appeals, Seventh Circuit. February 6, 1928.

Rehearing Denied May 2, 1928.

Second Rehearing Denied July 6, 1928.

No. 3650.

**1. Patents ⊗➝328—12,725, reissue, for folding box blank, held valid and infringed.**

Inwood & Lavenberg reissue patent, No. 12,725, for folding box blank, though adopting various elements of prior art, *held* valid and infringed, notwithstanding that it expired since filing of suit.

**2. Patents ⊗➝328—1,128,144, for work holder, held invalid for want of invention.**

Inwood & Lavenberg patent, No. 1,128,144, for work holder or work-controlling means for use in manufacturing wire-bound boxes, *held* to show no invention, but to involve only exercise of ordinary mechanical skill.

**3. Patents ⊗➝328—1,128,145, for machine for making box blanks, held invalid for want of invention.**

Inwood & Lavenberg patent, No. 1,128,145, for machine for making box blanks, comprising work-controlling means, *held* to show no invention, but to involve only exercise of ordinary mechanical skill.

**4. Patents ⊗➝328—1,128,252, for method of making wire-bound boxes, held invalid for want of invention.**

Inwood & Lavenberg method patent, No. 1,128,252, for method of making wire-bound boxes *held* to show no invention, but to involve only exercise of ordinary mechanical skill.

**5. Patents ⊗➝17(2)—It is not "invention" to describe process, produce machine, or formulate method, which any successful mechanic would produce, when required to effectuate given result.**

It cannot be considered "invention" to describe and claim process, or to produce machine, or formulate method, which any successful mechanic would produce, when required to effectuate given result.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invention.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Patent infringement suit by the Wirebounds Patents Company and another against the H. R. Gibbons Box Company. The District Court dismissed the bill for want of equity, and plaintiffs appeal. Affirmed in part, reversed in part, and remanded, with directions.

Emery, Booth, Janney & Varney, of New York City (L. A. Janney, of New York City, of counsel), for appellants.

Cheever & Cox, of Chicago, Ill. (A. C. Paul, of Minneapolis, Minn., and Howard M. Cox, of Chicago, Ill., of counsel), for appellee.

ALSCHULER and EVANS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge. This appeal involves the questions of validity and infringement of patents to Inwood & Lavenberg, reissue No. 12,725, for folding box blank, No. 1,128,144, for work holder, No. 1,128,145, for machine, and method patent No. 1,128,252. Typical claims will be found in the margin.[1] The District Court dismissed plaintiffs' bill for want of equity.

---

[1] Reissue No. 12,725, Claim 1.

A wire-bound foldable box blank, comprising a plurality of straight-edged sheets, wires secured to and connecting said sheets, and cleats secured to said sheets to terminate short of edges of the latter a distance equal or approximately equal to the thickness of a sheet, whereby when folded at a right-angle the end of one sheet overlaps the end of an adjacent sheet.

No. 1,128,144, Claim 6.

Work-controlling means for use in the manufacture of wire-bound boxes comprising, in combination, cleat-positioning means to receive a plurality of rows of cleats disposed substantially end to end, and cleat-spacing means relatively adjustable to suit individual cleats of different lengths to be received in said positioning means.

No. 1,128,145, Claim 25.

A machine for making box blanks comprising work-controlling means having cleat-positioning means to receive section cleats in parallel lines, and spacing means to space cleats endwise from each other in each line, preparatory to connecting said cleats in their spaced relation, said work-controlling means being arranged to receive said material to be secured to said cleats; fastener applying means for securing binding means to the side material and cleats controlled by the work-controlling means; means for relatively feeding the work-controlling means and fastener applying mechanism for securing said binding means across the intervals between said spaced cleats to secure them together in their spaced relations to form a foldable blank.

No. 1,128,252, Claim 2.

The method of making wire-bound boxes having individual cleats and individual sides pieces separated at the lateral corner edges of the completed box and connected by wires at said edges, which comprises assembling previously formed individual cleats with the separate previously formed side material for an individual side to provide a side unit of the box, assembling additional such side units to provide the other sides of the box, securing to the cleats of each side unit a wire binding extending completely across said unit, connecting said side units by said wire binding, while leaving the latter laterally flexible to accommodate relative shifting of the separate meeting edges of the pieces of side material, arranging said side units in box form, and completing the continuity of the wire binding, whereby relative longitudinal shifting of meeting edges of pieces of side material tends to bend the wire binding out of normal alinement, and is resisted by the tensile strength of the wire.

[1] The character and history of the patents involved are discussed in National Wire-Bound Box Co. v. Healy (C. C. A.) 189 F. 49; Wirebounds Patents Co. v. C., M. & L. Co. (D. C.) 238 F. 929, and Wirebound Patents Co. et al. v. Saranac Automatic Machine Corp., 24 F.(2d) 872. As stated by this court in National Wire-Bound Box Co. v. Healy, 189 F. 49, at page 51, the patents and applications are mere improvements upon, and extensions of, the art. In their basic patent, the patentees, in order to construct "their wirebound foldable box blank," adopted various elements of the prior art. They caught from the teachings of Howenstine, No. 453,479, Hamilton, No. 373,828, Archer, British No. 4,793, Healy, No. 768,123, and others, the idea of first selecting a plurality of sheets and preformed cleats secured or to be secured thereto. If they needed any instruction as to construction permitting overlapping of the sides in the completed box, they were taught that art by Archer, British No. 4,793, and Foster, No. 309,297. The idea of folding the wire or metal bound sides together into a box was old, and the specific idea of binding the sides together with wire was taught by Averill and Rosback. Various other patents, included in the prior art references, gave them additional light. They abandoned Rosback's teaching of first assembling one sheet and two coextensive cleats and subsequently cutting and step-mitering the latter, but retained his idea of stapling the binding wire to the sheets and cleats.

However they made a new box out of the old elements. Rosback tried to get a similar result, but his manner and method of construction proved impracticable. He started with the long cleat strips and long side veneer sheets, and proceeded through the successive steps securing the cleats to the rigid side blank, step-mitering the cleats, and scoring the veneer. This resulted in a veneer box bent upon the scored lines, which proved unsatisfactory and impracticable in its method of construction. Patentees' method reversed this order by preforming separately the cleats and sides. They avoided the faulty bending of the veneer along the scored lines and other defects of Rosback's product. They assembled and wired together the separate sections, so as to produce tensioning of the wires over the box corners, thus producing strength both longitudinally and laterally. It was the patentees' fundamental difference in the order of assembly and methods of construction that contributed most to the invention over Rosback. Their new arrangement produced a beneficial and highly successful box, which is flexible, elastic, strong, light, resistent to distortion, and of such character as to tend to resume its original shape and to continue an efficient carrier of its contents after distortion. The result was so successful that the production of the patentees, and their lessees, grew from 60,008 boxes, of the value of $10,339.27, in 1906, to 28,505,562 boxes, of the value of $11,756,285, in 1920. The box blank patent, therefore, is not a mere paper patent, but produces a successful commercial product.

Upon the face of the patent the advantages of the invention might seem slight, but in the light of experience they are manifestly all-important. The language of the Supreme Court in the Barbed Wire Patent Cases, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154, is pertinent: "Under such circumstances courts have not been reluctant to sustain a patent to the man who has taken the final step which has turned a failure into a success. In the law of patents it is the last step that wins. It may be strange that, considering the important results obtained by Kelly in his (prior art) patent, it did not occur to him to substitute a coiled wire in place of the diamond-shaped prong, but evidently it did not; and to the man to whom it did ought not to be denied the quality of inventor. There are many instances in the reported decisions of this court where a monopoly has been sustained in favor of the last of a series of inventors, all of whom were groping to attain a certain result, which only the last one of the number seemed able to grasp."

The question of infringement of this patent is not difficult, in view of the evidence, for the appellee's expert admitted that the appellee's box is the equivalent of the exact structure registered in the drawings of the reissue patent. For all practical purposes to make its box, the defendant begins at the same starting point and arrives at the same result as the patentees in the reissue patent. It follows, therefore, that, though the reissue patent has expired since the filing of the suit, there should have been a decree finding this patent valid and infringed, and directing an accounting.

[2-4] We are of the opinion, however, that the entire story of the appellee's invention is told in this reissue patent, and that the solutions of the problems demonstrated in the other three patents were obvious, and involved the exercise of merely ordinary mechanical skill.

The work holder patent describes and claims a portable work holder, the special

blocks in the two parallel channels engaging both the rear and front ends of the cleats, holding them against displacement. Upon these cleats, thus engaged, placed in their proper positions, are clamped the box sides. The work holder, thus laden, is carried through the stapling machine, which staples the wire to the sides and cleats thus held in place. The method patent tells us how the process is carried out. When the patentees evolved their scheme of starting with pre-formed cleats and sides, their important problem for successful construction naturally involved the assembly of the various elements in their proper form, in order that efficient manufacture might proceed. In making a successful product under their invention, which depends largely upon method of construction and order of assembly for its novelty, they were confronted with the problem of so assembling and retaining the parts in their proper places during the period of construction as to be able to manufacture at a commercial profit. The work holder expresses the natural adaptability of the mechanic's mind to the solution of this problem. The machine in which the work holder is to be placed was equally obvious. The prior art in machines taught patentees how to make a machine which would staple together the various elements of the box.

[5] Moreover, the method patent contains nothing but the natural and obvious method of producing the box. With their knowledge of the art it would seem to have been inevitable that they would fix upon this work holder, or its equivalent, and a machine involving the essential elements described and claimed in the machine patent, and that the process of manufacture should follow the course described in the method patent. It cannot be considered invention to describe and claim a process, or to produce a machine, or formulate a method which any successful mechanic would produce when required to effectuate a given result. No invention was achieved by any of these patents, and so far as they are concerned the lower court rightfully dismissed the bill for want of equity.

Furthermore, the work holder patent in suit covers only a specific portable work holder, one of the inherent features of which is that the cleats must be originally placed in correct position. The work holder is not self-correcting, and neither it nor the machine can automatically rectify any longitudinal displacement of the cleats before the side sheets and cleats are fastened together. The defendant's machines and methods on the contrary employ the inherent and fundamental principles of the original Rosback cleat pusher machine, in which original accuracy of the placement of the cleats is not necessary. So, if the work holder and machine patents were held to be of inventive character, there is no infringement of the specific invention claimed therein.

It follows that the decree of the District Court is reversed, in so far as the validity and infringement of the reissue patent and the right to an accounting thereon is concerned, and remanded, with directions to proceed in accordance with this opinion, and that in all other respects it is affirmed.

Each party shall pay its own costs on this appeal.

On Petition for Rehearing.

PER CURIAM. The chronological history of the patents involved, as related by appellants in their petition for rehearing, has not changed our conclusion. Assuming for the purpose of this discussion the correctness of appellant's statements of fact, the effect of an examination thereof is to demonstrate that the patentees were for some considerable time struggling with the problem of successful production of an improved commercial box. Their first step (May, 1904) was to design a new machine for stapling the Rosback box, built according to Rosback's methods. As appellants themselves say, "up to this point Inwood & Lavenberg had conceived nothing importantly new." They had, they say, previously conceived the idea of preforming the cleats, but discarded it as impracticable in commercial production. However, they persisted with this idea and endeavored to reduce it to practicability, and in June, 1904, claim to have made a workholder designed to hold separate cleats and one long side piece, merely an obvious modification of the Rosback method. This workholder contemplated no new box, but represented the mechanic's solution of the problem of dispensing with Rosback's step-mitering machine. As yet, there was nothing "importantly new."

They next modified the machine they had designed, so that it would utilize the workholder, and after such modification the state of their art was that they had modified Rosback's order of manufacture to the extent of preforming the cleats, designed a workholder to use for such modified method, and adapted their machine to utilize that workholder. But as yet no new box had been made; as yet no one had done more than change Rosback's long cleat to four short ones; or, in other words, cut the cleats before they were

attached to the long veneer sheet, rather than afterwards, make a workholder to hold the separate cleats, and adapt their noninventive machine to such workholder.

Appellants contend that it is apparent that this new method, workholder, and machine were not obvious improvements from the fact that for years the delvers in the art had endeavored to find a practical machine to make Rosback's boxes. The answer is that, the moment the long cleat was discarded and supplanted with short ones, the workholder and machine readily appeared as the logical solution of the mechanic to the problem confronting him. We cannot believe that in this situation invention was achieved, or that anything more than the exercise of mechanical skill was involved. Novelty and utility in the combination did not arrive until a further improvement was made, that of preforming the side materials and so arranging them that they would overlap. This last step accomplished an improvement, and the patent for the combination, with this improvement, was by us sustained.

The patentees then adapted their workholder to their invention by placing fins thereon for the purpose of holding the preformed sides in place, and adapted the machine previously devised for making the Rosback box by a modified method. Thus step by step, by obvious improvements in each instance in machine, workholder, and method, until the final step of using preformed sides as well as preformed cleats, and achieving overlapping thereof, by producing out of all of the old elements a new combination, they arrived at the consummation of their invention, a new and useful box, which we deem of inventive character. Nothing before that had constituted novelty; nothing before that achieved invention. It was the culmination of their efforts, and therein lies the entire story of their invention, as we have stated in the original opinion.

Nothing set forth in the petition for rehearing persuades us to modify what we said originally concerning infringement. Petition for rehearing will be denied.