22 C. C. P. A. (Patents)

### In re GUINOT.*

#### Patent Appeal No. 3446.

Court of Customs and Patent Appeals.
March 25, 1935.

Philip Mauro and Reeve Lewis, both of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner denying patentability, in view of prior art, of all the claims of an application for patent entitled: "Process for the Manufacture of Crotonic Aldehyde and Its Homologues."

Nine claims, numbered 1, 3, 4, 5, 6, 7, 8, 9, and 10, were covered by the appeal, but at the hearing before us the appeal as to claims Nos. 8 and 9 was withdrawn.

Of the claims remaining for our consideration, No. 1 seems fairly representative:

"1. A process for the manufacture of crotonic aldehyde from acetaldehyde, which consists in condensing this body in an aqueous solution by means of a certain quantity of suitable alkali, for the obtainment of aldol which remains in equilibrium with a certain quantity of untransformed aldehyde; in acidifying the resulting aqueous solution, in distilling the whole in order to remove in the first place the aldehyde which has not entered into the reaction; and in then collecting the crotonic aldehyde which is distilled over and affords with water a binary mixture having a minimum boiling point."

In his decision the Examiner cited the following references: Matheson, 1,151,113, August 24, 1915; Grunstein, 1,437,139, November 28, 1922; Herrly, 1,585,096, May 18, 1926; Lommen, 1,587,661, June 8, 1926; Systematic Org. Chemistry—Cumming, Hopper & Wheeling (1926 N. Y.) page 93.

To the foregoing the Board of Appeals, in its first decision, added "Richter's Organic Chemistry, Smith, Vol. 1, Ed. 1909, pp. 193, 208, 213, 316," but, while citing this additional reference and without expressly overruling any of those cited by the Examiner, the Board expressed the view that complete anticipation existed in Grunstein alone, this having been the basic reference relied upon by the Examiner, who seems finally to have rejected all the claims "on Grunstein, in view of Lommen."

It may be added that certain of the claims were rejected also as containing new matter, or matter not disclosed, but this alleged defect was met by amendments which applicant was permitted to make for the purpose of appeal from the Board's decision.

Following the Board's first decision, appellant sought and obtained a rehearing with the right to present affidavits touching the interpretation of the Grunstein disclosures as compared with the disclosures of appellant.

Upon receipt of the affidavits, to which we shall have occasion to make allusion later, the application, with the affidavits, was remanded to the Primary Examiner for reconsideration and report to the Board as to his conclusions thereon.

The Examiner duly reported, stating as a conclusion: "It is not considered that the affidavits prove that the holding as to the Grunstein patent was in error."

Thereafter, the Board of Appeals rendered its second decision, again making explicit reference to the Richter and Cumming

*Rehearing denied May 27, 1935.

publications. This decision concluded with the statement: "For the reasons indicated it is our view that the claims are unpatentable over the patent to Grunstein and that the showing made to overcome that patent is not sufficient."

Appellant suggests that the Board of Appeals tacitly set aside all the prior art cited except the patent to Grunstein. We do not so interpret its decision, but it does seem clear that it regarded the Grunstein patent as fully anticipating appellant's process, and we ourselves are of opinion that no need exists for detailing the teachings of the other cited art.

The objective of appellant is the production of crotonic aldehyde and the like, useful in different industrial arts, directly from what are designated "saturated aldehydes." It is not questioned that it is, as stated in the brief of the Solicitor for the Patent Office, "old in the art to condense acetaldehyde to obtain aldol and, as a separate process, to acidify aldol and by distillation produce crotonaldehyde." That is to say, the prior art cited teaches clearly the production of crotonaldehyde from aldol.

What appellant claims as novel in his process is the manufacture of the desired article directly from acetaldehyde by condensing same in an aqueous solution, that is, in water, and it is described in appellant's brief as production by a "continuous process," which we understand to mean production of the crotonic article without producing aldol as an intermediate, keeping the mixture in the aqueous solution throughout the condensing operation. He teaches the use of an alkaline element as a condensing agent, but nothing novel is claimed for this feature.

Grunstein's objective is aldol, and, to produce same, he teaches adding to acetaldehyde a catalyzing agent having an alkaline reaction, together with water. Then, in one of his examples, he teaches the distillation of the mixture so formed in a vacuum. In this example the specification states: "When distilling at the ordinary pressure, crotonaldehyde is obtained, as is well known."

In other words, Grunstein, while solely interested in producing aldol, which he does by distilling his mixture in a vacuum, incidentally teaches that if the mixture be distilled not in a vacuum, but at ordinary pressure, crotonaldehyde will result, and, in view of this latter teaching, taken together with the ingredients of the mixture, the Board concluded: "To sum up, we are of the opinion that the only difference between appellant's process and that of Grunstein is that the appellant uses a greater quantity of water but there is nothing in his specification to teach any specific limitations as to such quantity or that there is anything critical in it. There is no definite function disclosed for the large quantity of water nor any novel result produced thereby. The use of considerable quantities of water for the purpose of preventing a rise in temperature is thought to be obvious to any chemist, as it would dilute the reagent and reduce its activity."

We have examined with care the two affidavits, already alluded to, filed after the first decision of the Board.

We do not doubt the statements of these affiants to the effect that appellant's method, as practiced by affiants in their experiments, produced crotonic aldehyde in a much more satisfactory manner than did the method taught by Grunstein, but it does not follow that this renders appellant's process patentable.

The affidavits do not challenge the accuracy of Grunstein's statement that the crotonic product will result when the mixture is distilled at ordinary pressure, and that this result is obtained without aldol being produced as a separate or intermediate product. That, fundamentally, is what appellant seeks. That better results are obtained by using a larger amount of water than Grunstein normally uses may be conceded, but, as the tribunals of the Patent Office make clear, appellant's disclosure is not sufficiently specific as to the criticalness of any given amount of water to distinguish in a patentable sense from the Grunstein teaching.

The attention of the Board of Appeals was directed to a decision of the German Patent Office by which a German patent was granted to appellant, apparently upon the same subject-matter here involved, over the Grunstein method as defined in an Austrian patent, said to be substantially the same as that of his (Grunstein's) United States patent. This decision has been likewise brought to our attention; a copy of same being filed at the hearing before us.

The decision has been examined, but, in view of the fact that the German patent sys-

tem may be quite different in its legal aspects from that of the United States, we feel that it should not affect our conclusion here.

Certain emphasis is placed upon what is designated appellant's continuous process, the meaning of which, according to our understanding, has been already stated. No one of the claims specifically mentions "continuous process." It may be conceded, however, that continuity is essentially inherent in the operation, but it seems to us to be equally inherent in the Grunstein teaching.

The appeal is dismissed as to claims Nos. 8 and 9. As to all others, the decision of the Board of Appeals is affirmed.

Affirmed.