48 CCPA

**Application of Aubrey A. LARSEN.**
**Patent Appeal No. 6686.**

United States Court of Customs and Patent Appeals.
July 21, 1961.
Rehearing Denied Oct. 24, 1961.

Smith, J., dissented.

Laurence & Laurence, Washington, D. C. (Dean Laurence and Herbert I.

Sherman, Washington, D. C., of counsel) for appellant.

Clarence W. Moore, Washington, D. C., (R. E. Martin, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

WORLEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 11 to 20, inclusive, and 22 of appellant's application, No. 653,289, for a patent on organic compounds and processes of preparing them. All the appealed claims are directed to processes, the claims to the compounds having been allowed.

Since the issue is essentially one of law, the scope of the claims is not material, and it is unnecessary to reproduce any claim here.

The references relied on are

Taub et al. 1,022,645 April 9, 1912.
Guest 2,561,468 July 24, 1951.

The claimed processes involve the production of esters of substituted benzoic acids by reacting an alkali metal salt of such an acid and an appropriate halohydrin or epoxide. The compounds reacted are conceded to be old. The Taub et al. patent shows the production of an ester by reacting an appropriate alkali metal salt of a substituted benzoic acid and a halohydrin. The Guest patent discloses the use of an epoxide for esterification of the benzoic acid derivative and, as noted by the board, was relied on mainly in connection with claim 22 which involves the use of an epoxide.

In view of the obviously close parallel between the claimed processes and those of the references, we agree with the conclusion of the Patent Office that if the compounds recited in appellant's allowed claims were disclosed in the prior art it would be obvious to a person of ordinary skill in the art to prepare them by the processes set forth in the appealed claims. It is unnecessary to discuss this point further since appellant does not dispute it, but states in his brief that

"* * * For purposes of this appeal, appellant concedes that, if the products made by his process were not novel and patentable, the process might not be patentable over the references cited."

The issue presented here, therefore, is whether a process for making a patentable compound is, ipso facto, a patentable process.

There is substantial discussion in the briefs here as to whether the claimed processes would be obvious in view of the prior art, but, as we understand the board's decision, the principal basis of rejection is that appellant's invention resides solely in the product and is not properly defined by the process claims. This appears from the following statement in the board's opinion:

"* * * If in the instant case the process claims do not point out the invention, they might properly be subject to this criticism. * * * The major question is whether such claims define his, or any, invention and this we think is a proper subject of inquiry by the examiner.

*     *     *     *     *     *

"* * * Therefore under the above stated principles of patent law, we feel compelled to hold that appellant's invention does not reside in the process of making an ester. * * *"

While the entire record of appellant's application has not been presented here, it is clear from the examiner's answer to the appeal that the allowance of the claims to the compounds was based on the fact that they possessed unique, and

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

presumably unexpected, properties. Since there was nothing to indicate that the compounds, when made, would have these properties, it was not obvious to make the compounds. In such a case the allowance of claims to the compounds must depend on the proposition that it was unobvious to conceive the idea of producing them, within the meaning of Title 35 U.S.C. § 103.

Under these circumstances, however, the inventive concept is that of the compounds themselves. When they have been conceived, the processes by which they may be prepared may or may not be obvious. If, as is the case here, such processes, given the idea of the compound, are obvious then it is apparent that the invention resides in the compounds *per se* and is not properly defined as a process.

The fallacy of appellant's contention that "if a product be patentable, a claim to a process for producing such product is patentable" is apparent upon considering the not infrequent situations in which a new product may be made by any one of several obvious processes. It seems clear that in such a case each of those obvious methods could not properly be considered patentable, and yet there is logically no more reason for allowing claims to any one than to the others. The fact that an applicant sees fit to disclose a particular one of the processes should have no bearing on its patentability.

A case in point is Wirebounds Patents Co. et al. v. H. R. Gibbons Box Co., 7 Cir., 25 F.2d 363, 365. In holding the method claims there involved unpatentable, the court said:

"Moreover, the method patent contains nothing but the natural and obvious method of producing the box. * * * It cannot be considered invention to describe and claim a process, or to produce a machine, or formulate a method which any successful mechanic would produce when required to effectuate a given result. * * *"

Another situation somewhat similar to the instant one was involved in In re Kulieke, 277 F.2d 948, 951, 47 CCPA 943. There claims had been allowed on a railway coupler knuckle of specific construction and appellant sought the allowance of claims on a core mold assembly designed for casting the coupler. In refusing the claims on the ground that the invention resided solely in the coupler, the court said:

"From our consideration of the record, we agree with appellant that there is but a single invention here involved, but we disagree with the conclusion he would have us draw from this fact. In our opinion this single invention is found in the coupler knuckle per se. We have found nothing about the mold and core assembly, as claimed, which indicates that it would be unobvious to one having the ordinary skills in this art to form such an assembly to produce the case knuckle. * * * Once the engineering design of the casting has been determined, the mold and cores will necessarily follow that design."

While that case relates to the mold for making a product rather than a process of making it, the same reasoning is applicable in both cases. When the sole inventive concept resides in the product the claims should be limited to product claims.

Appellant relies heavily on decisions in Canada and Great Britain which allegedly hold process claims allowable under circumstances similar to those of the instant case. We have repeatedly held that, in view of the differences between foreign patent laws and those of the United States, the allowance of patent claims in foreign countries is not pertinent to the question whether similar claims should be allowed here; In re Guinot, 76 F.2d 134, 22 CCPA 1067; In re Kleine [Pfannenstiel, and Matthaes], 83 F.2d 928, 23 CCPA 1216; and In re Kluter, 92 F.2d 906, 25 CCPA 730. No reason appears for reaching a different conclusion here.

This is not a case in which it is doubtful whether the invention resides in the process or the product. Clearly the invention lies in the compounds themselves, by whatever process produced, and we agree with the board that the allowance of claims to a particular, although obvious, method of producing them which happens to be disclosed in appellant's application would not constitute a proper definition of appellant's invention.

In view of the foregoing conclusion it is unnecessary to consider the extensive arguments advanced in the briefs as to what is meant by the expression "that the subject matter as a whole would have been obvious at the time the invention was made" in 35 U.S.C. § 103.

The decision is *affirmed*.

Affirmed.

RICH, Judge (concurring).

I reach the conclusion to affirm on the basis only of the following reasoning.

If we analyze patentability in the terms provided for us by Congress, we have to apply the prerequisites of novelty, utility, and unobviousness to the subject matter claimed, which is a process.

*Utility* can be disposed of because it has not been questioned by the Patent Office, and properly so because one could not very well contend that a process by which a product can successfully be made has no utility.

*Novelty* we have, not in the sense of manipulative procedures, but only in a *selection* of known compounds to be reacted. The examiner admits the presence of novelty. So far as manipulation is concerned, all the claims call for is "reacting." It is not new in chemistry to *react* two inherently reactive compounds. It has not been shown, however, that the art discloses reacting A with B, to simplify the subject matter of the claimed processes, so we must admit there would be novelty in doing so.

Would it be *obvious* to react A with B? Here lies the crux of the problem.

I agree with the examiner that "applicant obtains exactly what the art teaches will be obtained" and I do not understand that applicant denies it, in the sense of the exact *product* obtained. But, he says, the art does not suggest reacting A with B—the admittedly known materials reacted by what applicant admits is "a known type reaction procedure." We are asked, however, to give weight to "the material acted upon and the end result." The end result I will call AB, the reaction product. I do not know what other result the claimed processes could have.

The "material acted upon" is material A and material B which act upon each other, or react. I have already said there is novelty in their selection. I am unable, however, to find anything *unobvious* in their selection because that is dictated by the desire to produce AB. While selecting A and selecting B to react with it may not be the only way to produce AB, it cannot be contended that it is not the obvious thing to do if AB is what you want to make.

The "end result" applicant asks us to consider is described by him variously as "the physical attributes of the result," "the properties of the products produced," and, in the examiner's words, "the particular utility or properties of the final chemical compound." My response to this is that if it be the fact that the final compound AB possesses unique, unexpected, surprising, or highly useful properties, they *inhere in the product* AB, not in A alone, B alone, or *in the process* of reacting them. While such attributes in a product may make it, the product, patentable they do not make the process patentable because they are in no way a part of the process. They are attributes of the product alone and would so remain though it were made by an entirely different process.

If we are asked to jumble up the product and the process and regard it as all the same thing, whether dubbed "the invention as a whole" or given any other name, and it almost seems that we are, then I say this exhibits a fine disregard

for the requirement of section 112 that the applicant shall particularly point out and distinctly claim his invention. What this statutory requirement amounts to as the case law has developed it, is that applicant, with distinctness and particularity, shall define in "claims" that part of his disclosed invention which possesses the attributes of patentability under the statute, for until he does, his "claims," which under well-settled precedents define he scope and content of his patent monopoly, cannot be granted or allowed.

What can be *granted* in the form of patent claims does not depend, to use words from section 112, on what "the applicant regards as his invention," but on whether the subject matter he chooses to so regard and define is new, useful, unobvious, and is his invention.

The process claims define, in effect, only the reaction of A with B to produce AB, the reaction admittedly being old except for the selection of A and B from the mass of known materials available. Though they point out novel subject matter, these claims, tested against the prior art, do not define anything unobvious to one of ordinary skill in this art.

This art is chemistry. Were we in a mechanical art, I think no one would trouble to argue that every time a new tool or machine is invented one can obtain process claims directed to nothing more than the obvious steps of selecting the materials, forming the parts on suitable machines, and assembling them in their operative relationship. I can see no distinction in principle here. Yet that is what applicant contends in advancing in his conclusion

"the proposition that, if a product be patentable, a claim to a process

for producing such patentable product, is patentable, at least when present in the same application."

That proposition carries the seeds of its own destruction. It assumes that every patentable product is produced by an *unobvious* process.

What I have said is no other than what the examiner said in his holding that

" * * * the processes claimed herein are new and useful but not *inventive.*

* * * * * *

"Patented claims are granted for *only one reason* and that is because they are *inventive*; the process claims herein are *not inventive.*" (My emphasis.)

The difference is that I have said it in the terms laid down by Congress, deliberately used in the statute for the sake of clarity, which I find more conducive to clear thinking than to discuss the patentability of an invention in terms of its being "inventive." The statute makes no such requirement:[1]

The reason the invention [2] before us is not patentable under the statute is that it is obvious, notwithstanding its difference from the prior art. 35 U.S.C. § 103.

I therefore agree with the conclusion of the examiner in his Answer, and almost with his mode of stating it, which is:

"It is therefore submitted that the process claims are properly rejected as unpatentable over the art in that they recite no more than the obvious application of old esterification processes and that the patentability of a chemical process can not be predicated upon the inventiveness [patentability or unobviousness?] of the product produced thereby."

1. I am well aware, having participated in the venture, that section 103 was intended to be and is a "codification" of the requirement of "invention" which was developed in the courts and was never, before 1952, in the statute. The term "invention" as denoting a prerequisite to patentability had, however, acquired so many diverse meanings that in drafting

section 103 its use was assiduously avoided. I think its avoidance by those attempting to apply the statute in the future will assist materially in carrying out the intent of the legislature.

2. "The invention" cannot be anything other than what is claimed.

There is a certain amount of logic in holding a product to be unobvious because of the discovery in it of unobvious properties, such as its ability to act as a non-toxic X-ray contrast agent, because the properties inhere in the product. But I see neither logic nor sound interpretation of the patent law in transferring such properties from the product in which they inhere to a process of making the product in which they do not.

MARTIN, Judge (concurring).

I am of the opinion that the decision of the board should be affirmed for the following reason:

It appears from the prior art that the appealed claims recite only obvious esterification processes. I do not believe the mere selection of the particular compounds to be reacted imparts patentability to these *process* claims any more than the selection of particular parts of a machine would render an obvious process for making the machine patentable.

Although I am aware that machines differ from chemical compounds in that the individual parts of a machine retain their identity and merely interact or cooperate in producing some desired result while chemical reactants lose their identity in reacting to produce a new substance, I do not believe this difference is significant in deciding the issue before us. The prior art in this instance indicates to me that the chemist of ordinary skill would know that appellant's chemical reactants would react as stated and claimed.

SMITH, Judge (dissenting).

My analysis of the invention involved here differs from that of my colleagues and leads me to a different conclusion on the issue of patentability of the appealed process claims. The specification and claims seem to me to show that the invention relates to decreasing the toxicity of the alkyl esters of certain triiodobenzoic acids, particularly, the ethyl ester of 3–acetamido–2,4,6–triiodobenzoic acid by the placement of hydroxy groups in the alkyl ester moiety in such positions that the carbon atom adjacent to the carboxyl group is always unsubstituted. The specification states:

"This restriction of the placement of the hydroxy groups eliminates the hemiacetal type derivatives which would result from having a hydroxy group on the carbon atom attached to the carboxy group."

Therefore, I view the product and process claims as but different ways of claiming the disclosed invention. At the time this invention was made, the prior art did not disclose either the claimed product or the claimed process for making that product. I am unable to find a factual basis for the assumption stated in the majority opinion written by Judge Worley, that "clearly the invention lies in the compounds themselves, by whatever process produced."

In rejecting applicant's process claims as "obvious" we should determine what would have been obvious from the prior art to one of ordinary skills in the chemical arts *"at the time the invention was made."* (35 U.S.C. § 103) (Emphasis added.)

The prior art "at the time the invention was made," must, in my opinion, exclude applicant's new compounds. It is only as the prior art is viewed *after* applicant's invention of the new compounds that the process claimed has been found by the majority opinion written by Judge Worley to be obvious to a person of ordinary skill in this art. This, in my judgment, is not a correct application of 35 U.S.C. § 103.

While Judge Rich's concurring opinion does not state this assumption as directly as does the majority opinion written by Judge Worley, it seems to me it is implicit in the reasoning by which the conclusion is reached that it would be obvious to react A and B "because that is dictated by the desire to produce AB." The same assumption underlies his further statement "while selecting A and selecting B to react with it may not be the only way to produce AB, it cannot be contended that it is not the obvious thing

to do *if AB is what you want to make."*
(Emphasis added.)

Since I am unwilling to consider the new compounds as a part of the prior art at the time the invention was made, I would reverse the decision of the board.