49 CCPA
**Application of Walter Charles Joseph ROSS and Walter Davis.**

**Patent Appeal No. 6792.**

United States Court of Customs and Patent Appeals.

July 25, 1962.

Albert L. Jacobs, New York City, and James W. Dent, Washington, D. C., for appellants.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for Comr. of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

MARTIN, Judge.

This is an appeal from a decision of the Patent Office Board of Appeals rejecting claims 1 through 5, all of the claims of appellants' application for a patent on "Improvements in Chemotherapeutic Agents."

---◆---

The following claims are representative:

1. Compounds of the general formula:

$$(CH_2CH_2Cl)_2N-\underset{}{\bigcirc}-O(CH_2)_nCOOR'$$

in which R' is selected from the group consisting of hydrogen, methyl and ethyl radicals and n is an integer of from 1 to 4.

2. p-NN-Di-(2-chloroethyl)-aminophenoxypropionic acid.

3. A process for the manufacture of compounds of the general formula:

$$(CH_2CH_2Cl)_2N-\underset{}{\bigcirc}-O(CH_2)_nCOOR''$$

in which R'' is selected from the group consisting of methyl and ethyl radicals and n is an integer of from 1 to 4, which comprises treating a compound of the general formula:

$$(CH_2CH_2OH)_2N-\underset{}{\bigcirc}-O(CH_2)_nCOOR''$$

with phosphorus oxychloride.

---◆---

Claim 3 recites a process for preparing the compounds of claim 1 wherein R' is methyl or ethyl. Claim 4 recites a process for preparing the compounds of claim 1 wherein R' is hydrogen, said process being the process recited in claim 3 plus an additional acid hydrolysis step. Claim 5 corresponds to claim 4 but is limited to a process for preparing the specific carboxylic acid recited in claim 2.

The references relied on by the examiner and board are:

British Patent      128,912      Oct. 30, 1919
Everett et al.,    Chemical Abstracts 44,    1431-2
   (1950)

As the claims point out, the appealed application relates to certain organic chemical compounds and to processes for preparing them. The specification describes rat experiments which demonstrate, as admitted by the examiner and the board, that the claimed compounds are "effective tumour growth inhibitors when tested against transplanted Walker rat carcinoma."

This appeal presents two issues. One issue relates to the utility of the claimed compounds and processes; the other issue relates to the obviousness of the claimed processes in view of the cited prior art. We will consider these issues separately.

The examiner was of the opinion that "the treatment of transplanted Walker rat carcinoma is not sufficient utility to meet the statutory requirements," that utility in treating human tumors could be inferred from the specification, and that appellants must demonstrate that the claimed compounds are "safe, effective and reliable" for treating tumors in

humans and "accepted by the medical profession" for that purpose. Since those demonstrations had not been made, the examiner rejected all of the claims on the ground that there was "an insufficient proof of utility."

■ The board sustained this rejection and in its opinion emphasized the position that "demonstrated effectiveness" of appellants' compounds "in connection with transplanted Walker rat carcinoma" is not "sufficient proof of utility under the patent statutes."

We have compared the facts in the instant case with the facts in In re Bergel and Stock, 292 F.2d 955, 48 CCPA 1102. We agree with the statement of the solicitor in his brief in the instant case that these two cases involve "an identical issue of utility in a fact situation of substantially identical nature." We have considered all of the arguments of the examiner and the board in the instant case but we see no reason to decide this issue differently than we did in Bergel and Stock, supra, or in the case companion thereto, In re Bergel and Stock, 292 F.2d 958, 48 CCPA. For reasons set forth in Bergel and Stock, we *reverse* the decision of the board as to its rejections of claims 1 through 5 on the utility issue.

■ We turn next to the rejection of process claims 3, 4 and 5 as being obvious in view of the prior art of record. Appellants do not contend that the additional acid hydrolysis step recited in claims 4 and 5 is significant in determining the patentability of these two claims. Accordingly, we will treat the claims as a group, limiting our remarks hereinafter to claim 3.

As can be seen in claim 3, appellants' process involves replacement of both $-OH$ radicals in a $(CH_2CH_2OH)_2N-$ grouping with $-Cl$ by "treatment" with phosphorous oxychloride, $POCl_3$.

The British patent discloses the transformation of $(OHCH_2CH_2)_2NC_6H_4COOR$ to $(XCH_2CH_2)_2NC_6H_4COOR$ by treatment with a "phosphorous halide." In that reaction, R is an alkyl radical, for example, ethyl, and X is a halogen, for example, chlorine. The patent indicates that "$C_6H_4$" represents the "para" residue of a benzene ring and that $(OHCH_2CH_2)_2N-$ is merely another mode of expression of the grouping which appellants symbolize as $(CH_2CH_2OH)_2N-$. Appellants' counsel admitted at oral argument that "phosphorous halide" could be considered as generic to phosphorous oxychloride. It is apparent, therefore, that this patent discloses the same type of replacement of $-OH$ with $-Cl$ recited in the appealed claims.

Everett et al. disclose the same specific chemical transformation disclosed in the British patent as well as several other analogous chemical transformations each involving the same type of replacement of $-OH$ with $-Cl$. In two of these, $POCl_3$ is specified as the chlorination reagent. One of the authors of the Everett et al. reference, W. C. J. Ross, is one of the appellants here.

The board agreed with the examiner that the appellants' process is unpatentable over the cited references. The board stated, inter alia:

"* * * We regard the process as being a wholly obvious one from a consideration of the cited art, despite the fact that a novel chlorinated product is obtained by starting with its corresponding hydroxylated compound. * * *

"Appellants contend * * * that it cannot be assumed that hydroxyethylaminophenoxy lower acyl esters [appellants' reactants] will act in the same way as hydroxyethylamino benzoates [prior art reactants], but they have presented no reason or authority for believing that the presence of the $-O(CH_2)_n-$ group will take part in or affect the chlorination reaction in any way. The chlorination in the references takes place with the hydroxyl group and this is exactly the same reaction as occurs in appellants' process."

■ At oral argument, appellants admitted the relevancy of the British pat-

ent and the Everett et al. reference as prior art, but urged that their particular process as claimed is patentable because the new compounds which they obtain by that process, and which have been held by the Patent Office to be new and unobvious, have "especially valuable properties," i. e., as tumor growth inhibitors

A similar situation faced this court in In re Larsen, 292 F.2d 531, 49 CCPA 711.[1] In that case, certain product claims had been allowed by the Patent Office, presumably because the products possessed unique and unexpected properties. The process used by Larsen to make his products was held by the Patent Office to be unpatentable over certain prior art. Although Larsen did not specifically urge patentability for his process because of any "especially valuable properties" of the products obtained thereby, he did urge patentability for the process on the ground that the products were patentable. We rejected that contention for the several reasons set forth in In re Larsen and we do not consider the fact that appellants' products may have "especially valuable properties" a sufficient reason to reach a contrary result in the case at bar.

■ Appellants also urge, as they did throughout the prosecution of this case in the Patent Office, that the starting material specified in the process claims differs from any starting material previously used in this reaction in containing an $-O(CH_2)_n-$ grouping, where $n$ is 1, 2, 3 or 4,[2] and it was not possible to predict whether or how this grouping would affect the desired reaction with phosphorus oxychloride. On that matter, we agree with the position of the examiner and the board which we interpret to be that once the examiner had cited prior art showing the general reaction to be old, the burden was on appellants to present "reason or authority for believing that the group $-O(CH_2)_n-$ would take part in or affect the basic chlorination reaction [the transformation of $CH_2CH_2OH)_2N-$ to $CH_2CH_2Cl)_2N-$] disclosed in the references."[3] This appellants did not do.

For these reasons, we *affirm* the board's rejection of claims 3, 4 and 5 as being unpatentable over the prior art of record.

In summary, the board's rejection of claims 1 through 5 on the utility issue is reversed and the board's rejection of claims 3, 4 and 5 on the obviousness issue is affirmed.

Modified.

SMITH, Judge (dissenting in part).

While I agree fully with the majority opinion in its reversal of the board on the utility issue as to claims 1 through 5, I would, however, reverse the rejection of claims 3, 4 and 5 under 35 U.S.C. § 103 as being obvious in view of the prior art. My reasons are more fully stated in my dissenting opinion in In re Larsen, 292 F.2d 531, 49 CCPA 711.

The Board of Appeals reversed the examiner's rejection of the compound claims 1 and 2 on the prior art. This amounts essentially to a finding that claims 1 and 2 claim an unobvious compound. The process covered by claims 3, 4 and 5 is specific to the manufacture of these compounds. It seems to me they are little more than claims to this product phrased in terms of the process by which it is manufactured. Yet the board in its opinion states:

"* * * In essence, these claims define no more than the standard elementary textbook procedure of treating an alcohol with a halogenating agent, specifically, phosphorous oxychloride, to convert the alcohol into the corresponding halide. The British patent shows a reaction of this nature, suggesting the use of

---

1. Larsen was not available to appellants until after their brief in this appeal had been filed, but it was discussed at oral argument.

2. In specific claim 5, $n$ is 2.

3. Board's decision on reconsideration.

"halogenating reagents such as phosphorous * * * halides" in treating a related type of compound to prepare a related type of product and Everett et al. disclose the use of phosphorus oxychloride as a halogenating agent for a similar conversion of alcohol to chloride. We regard the process as being a wholly obvious one from a consideration of the cited art, *despite the fact that a novel chlorinated product is obtained by starting with its corresponding hydroxylated compound. * * *.*"

[Emphasis added.]

I agree with the board that the claimed compounds are both novel and unobvious. Claims 3, 4 and 5 recite these compounds, and require that they be produced by a particular process from selected particular ingredients. All of these factors must be found to have been "obvious" at the time the "invention as a whole" was made in order to support a rejection under 35 U.S.C. § 103.

Throughout the majority opinions in the Larsen case a considerable degree of reliance was placed on the fact that Larsen's new product resulted from the use of old known starting materials in a known process. In the present case, the claimed starting materials selected by applicants to carry out the claimed reaction to produce an admittedly novel compound are not shown to be old as in the Larsen case. It seems to me, therefore, that even the majority opinions in the Larsen case do not warrant the conclusion here reached, unless the majority in this case has indulged in the unsupported assumption that the starting materials are old.[1]

The difference here between the claimed process and the prior art is summarized in appellants' brief as follows:

"The Patent Office relied upon two references, namely, British Patent 128,912 of October 30, 1919 (R 89, 91) and Everett et al Chem. Abstracts *44*, 1431–1432 (R 93). The British Patent shows the use of halogenating agents to convert the $CH_2CH_2OH$ group to $CH_2CH_2Cl$ by means of phosphorus or sulpha halides but there is no specific mention of the use of phosphorus oxychloride as required by the claims and of course the compounds being produced are different. In addition, the reference carries out halogenation under pressure and heating in a closed vessel whereas appellants use room temperature and refluxing.

"The Chem Abstracts reference shows that a compound having two reactive haloalkyl groups attached to the nitrogen atom has cytotoxic activity against transplantable rat tumors but the same compounds are not involved and hence the reference is only of general, not specific, interest. It does mention the use of phosphorus oxychloride in benzene for converting OH to Cl. It will be observed that one of the authors is one of the present applicants and when the article was written the present process was not specifically known for the production of the

---

1. Appellants' attorney stated during oral argument that:

"* * * The only basis on which patentability could be predicated here would be that we are using a *different starting material*, producing a different product and that product is of a highly outstanding nature * * *."

No discussion as to whether appellants' starting material is old is found in the record or briefs. The only reference to this point was made at the oral argument as follows:

"Judge Rich. The compound that you start with, the second one named in the claim [claim 3], is that a known compound in the art?

"Mr. Schimmel. Yes. There's nothing to indicate that it isn't. I might not be so positive about that. There is nothing to indicate that it is not a known compound."

I do not think that the above statement of opinion by the solicitor is sufficient evidence upon which to conclude that appellants' "different" starting compounds are old.

new compounds of claims 1 and 2. In other words, this reference does not go far enough to make the present invention obvious or predictable and much more is necessary than the ability to halogenate an alcohol group. This is particularly true because it is impossible to forecast the activity of new compounds produced by a novel process and even those most highly skilled in this complex biological field would not attempt to make any such prediction. The knowledge in the Chem Abstracts reference to the effect that di-halogenoalkyl should be present is far from enough because the molecules as a whole must be considered not fragmentary portions thereof. As the Examiner admitted and as the Board of Appeals confirmed, there is no direct analogy to be drawn between compounds of the present invention and the compounds of the references as far as claims 1 and 2 are concerned. The rejection of claims 1 and 2 on the same art was reversed by the Board of Appeals and it seems clear that such reversal should have extended also to the process claims. The Patent Office should not assume, as it has done, that the presence of the $OCH_2$ group between the cyclic nucleus and the monocarboxylic acid or ester has no effect upon the nature of the chemical reaction. It was an error to make such an assumption especially when the Board of Appeals recognized that the compound claims were allowable subject to a determination only of the question of utility."

It seems to me the present decision incorrectly extends the majority view in the Larsen case. I do not think a rejection based on 35 U.S.C. § 103 should be permitted to have this result, particularly when here, as in the Larsen case, it is impossible to draw a time line between the invention of the new compounds and the invention of the process for producing them.

The "whole" invention to which reference is made in 35 U.S.C. § 103 may, as here, be so closely related that in an interference situation it would not be possible to establish a date of conception of the novel product apart from the reduction to practice of the process by which it is made. Section 381 of Robinson on Patents in referring to such a situation states:

"In many inventions the act of conception is clearly distinct, in point of time, from that of reduction; * * *. In many others the work of conception and reduction goes forward almost simultaneously, so nearly so that no date can be fixed as that before which the conception was complete and after which the reduction to practice was begun. This is true in nearly all inventions which are the result of experiment,—where the inventor, instead of evolving the entire art or instrument out of his own thought, conjectures that such an act or substance will subserve a given purpose, and having tried it, finds that it accomplishes the end. The production of a new means by this method is, equally with the former, an inventive act, but at no instant before the experiment succeeds can it be said that the conception of the invention exists in the inventor's mind. Until that instant it is mere speculation, at most a probable deduction from facts already known; and the same act which reduces it to practice gives to the conception its definite and final form."

Cf. Smith v. Bousquet, 111 F.2d 157, 27 CCPA 1136.

Unless we assume, as appears to have been done in the majority opinion, that the claimed compositions of matter were invented before the process was developed, it seems logically impossible to apply the test of 35 U.S.C. § 103 in rejecting claims 3, 4 and 5. In my opinion, inventions in these highly technical fields do not lend themselves to such sharply

drawn lines. The difficulty in a case such as the present in separating the process embodiment of the invention from the product embodiment thereof should permit an applicant a reasonable leeway to claim his invention as embodied either in the process for producing such compounds or in the compounds themselves.