**BENGER LABORATORIES LIMITED, a Corporation of Great Britain, Plaintiff,**

v.

**R. K. LAROS COMPANY, Now Pharmachem Corporation, a Pennsylvania Corporation, Defendant-Counterclaimant-Appellant,**

and

**Cutter Laboratories, a California Corporation, Intervenor-Defendant-Appellant,**

v.

**ARMOUR AND COMPANY, an Illinois Corporation, Counterclaim-Defendant.**

**Nos. 14219, 14220.**

United States Court of Appeals
Third Circuit.

Argued May 9, 1963.

Decided May 29, 1963.

---

Stanton T. Lawrence, Jr., Pennie, Edmonds, Morton, Barrows & Taylor, New York City (Morgan, Lewis & Bockius, Philadelphia, Pa., Pennie, Edmonds, Morton, Taylor & Adams, W. Brown Morton, Jr., Robert J. Kadel, New York City, of counsel, on the brief), for appellants.

Charles J. Merriam, Merriam, Smith & Marshall, Chicago, Ill. (Hayward H. Coburn, Philadelphia, Pa., Jerome B. Klose, Chicago, Ill., Drinker, Biddle & Reath, Philadelphia, Pa., on the brief), for plaintiff-appellee.

Timothy L. Tilton, Chicago, Ill., Edward W. Mullinix, Philadelphia, Pa. (Dawson, Tilton, Fallon, Lungmus & Alexander, Chicago, Ill., Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., on the brief), for appellee Armour & Co.

Before McLAUGHLIN and FORMAN, Circuit Judges, and COOLAHAN, District Judge.

PER CURIAM.

In this patent infringement suit Judge Kirkpatrick in a comprehensive, sound opinion [1] held plaintiff's patent to be valid, that its reissue was proper, that it had been infringed by defendant's product and that its licensing arrangements did not violate the antitrust laws. The court found that plaintiff's product claims 1 to 5 inclusive and 12 presented a new, unexpected and important result by using dextran as a complexing agent for ferric hydroxide for the purpose of safely injecting the product intramuscularly. It said:

> "That the admittedly old steps of the process would result in obtaining such a solution of dextran were the carbohydrate used could not but have been obvious to a skilled worker in the field, but that is all that was obvious. What was not obvious was that the solution produced would be intramuscularly injectable, and the discovery that it would have this unexpected and unpredictable property qualifies it as patentable."

See Application of Larsen, 292 F.2d 531 (C.C.P.A.1961).

1. 209 F.Supp. 639 (E.D.Pa.1962).

With respect to defendant's contentions that plaintiff failed to state the best method of carrying out its invention and was not entitled to reissue of its patent, the trial court rightly concluded from the evidence as a whole that at the time of the American application there was a real question as to which was the best method; that there was sufficient disclosure, good faith and no concealment on the part of the plaintiff. Upholding the reissue the court found correctly from the evidence that "The plaintiff's explanation as to the way in which Example 3 came to be omitted from its American application is in my judgment entirely credible and it satisfactorily establishes 'error without any deceptive intention' and negatives the defendants' charge of fraud." In addition, the Patent Office, on disputed testimony, in its discretion, reissued the patent in suit. On the facts before the district judge that decision called for affirmance. Topliff v. Topliff and Another, 145 U.S. 156, 171, 12 S.Ct. 825, 36 L.Ed. 658 (1892); Cuddlebaugh v. Rudolph, 131 F.2d 795, 799 (3 Cir., 1942).

The complete answer to defendant's complaint of indefiniteness of the patent's description is contained in the fully documented finding of the district judge that the product was as well described as could be under the circumstances where plaintiff frankly stated it did not know the exact chemistry of its product and where no one in the case attempted to produce a chemical formula for it. Nor is there anything in evidence validly disputing the proposition that enough was known and revealed of the product to establish adequate tests with reference to infringement.

On the question of infringement there was sharply contradictory testimony. The court believed the evidence of those experts (notably Dr. Wolfram who has most impressive credentials in the field) who stated that defendant's product contains a true complex of iron and dextran as distinguished from the defense assertion that the ferric hydroxide particles were merely suspended in the colloidal range and coated with the dextran. The court noted, "This is not to say that the defendants' expert is entirely mistaken in thinking that the defendants' product will contain colloidal particles of ferric hydroxide surrounded by dextran. It may well contain these, but I am satisfied that it also contains the complex of the patent in suit, and this fact is enough to establish infringement of the product claims."

Finally, we find no evidence in the record to sustain the defense charge that the exclusive licenses for the United States granted Armour for the veterinary field and Lakeside Laboratories for the human field, plus a third non-exclusive license granted to Fort Dodge, violate the anti-trust laws.

The judgment of the district court will be affirmed.