GOODYEAR TIRE AND RUBBER CO.,
and Thomas H. Rogers, and Newell R.
Bender, and Theodore B. Burkholder,
Plaintiffs,

v.

David L. LADD, Commissioner of
Patents, Defendant.

Civ. A. No. 696–62.

United States District Court
District of Columbia.

Dec. 20, 1963.

Francis C. Browne, Browne, Schuyler & Beveridge, Washington, D. C., for plaintiffs.

Clarence W. Moore, Sol., U. S. Patent Office, Washington, D. C., for defendant.

JACKSON, District Judge.

This is a civil action brought pursuant to 35 U.S.C. § 145 in which plaintiffs seek judgment authorizing the defendant, Commissioner of Patents, to issue a patent containing claims 1 to 9, inclusive, of application Serial No. 514,106 filed by co-plaintiffs, Thomas H. Rogers, Newell R. Bender, and Theodore B. Burkholder on June 8, 1955. The co-plaintiff, Goodyear Tire and Rubber Co., is the assignee of the inventors.

No claims were allowed by the Patent Office. After the trial, counsel for plaintiffs withdrew claim 1 from the present action, and thus claims 2 to 9, inclusive, are before this Court. The parties agree that all these claims stand or fall together.

All the claims in suit are directed to an improved process of producing flexible, elastomeric cellular materials, i. e., polyurethane foams. The alleged invention resides in the concept of mixing the liquid reactant mixture of polymeric material, polyisocyanate and water under a pressure of from 0.5 to 60 pounds per square inch gauge.

The Board of Appeals affirmed the Examiner's rejection of the claims in suit as being unpatentable over the Hoppe et al patent No. 2,764,565, which issued on application Serial No. 527,106, filed August 8, 1955. That application is a continuation-in-part of the now abandoned application Serial No. 327,522 filed December 23, 1952. The parties agree that only the disclosure brought forward from application Serial No. 327,522 is available as a reference since only that disclosure has a filing date earlier than the filing date of plaintiffs' application.

The Hoppe et al application, Serial No. 327,522, discloses a process and apparatus for continuously preparing a stream of polyurethane plastic. The invention there resides in the intermittent injection of at least one of the reactants into a mixing chamber containing a continuously flowing stream of reactants. These injections are made through nozzles at high pressures—up to 1000 atmospheres —and frequencies. Additional stirring means are employed in the chamber so as to insure that the uniformly mixed stream of reactants is discharged there-

from in the liquid state and before any substantial liberation of gases has taken place.

That application also briefly discloses a modification of the above-described apparatus. "In this modification, the two components of the reaction mixture * * are conveyed separately to a mixing chamber into which they are injected under pressure through separate nozzles, or a common mixing nozzle, and the activator is either conveyed separately to the mixing chamber and injected into it under pressure through a separate nozzle, or the common mixing nozzle, or is conveyed to the mixing chamber in admixture with one of the said components."

The tribunals of the Patent Office concluded that since in this modification *all* the liquid reactants are injected under pressure through the common mixing nozzle into a mixing chamber, it would have been obvious to one having ordinary skill in the art to mix all the liquid reactants under pressure in the manner recited by the claims in suit.

Undeniably, there are differences between the Hoppe et al modification, and the claimed process. Hoppe et al discloses that all the reactants are injected under pressure through a "common mixing nozzle" into a mixing chamber, or, in other words, the reactants are mixed under pressure as they pass through the nozzle, while the claims in suit recite that all the reactants are simply mixed under specified range of pressures in a chamber.

■ Therefore, the issue facing this Court is whether or not these differences are such that the claimed subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. In deciding this issue, the writer is mindful that the decision of the tribunals of the Patent Office is presumed to be correct, Cook v. Watson, 181 F.Supp. 896 (D.C.D. C.1960), and that it should be followed unless the evidence introduced at trial demonstrates that there is clear error or lack of rational basis in that decision.

Abbott et al. v. Coe, 71 App.D.C. 195, 109 F.2d 449 (1939), and Schaefer v. Watson, 109 U.S.App.D.C. 360, 288 F.2d 144 (1961).

It seems apparent to the writer that if Hoppe et al can be said to suggest to one skilled in the art the concept of mixing liquid reactants under pressure in a chamber, the recitation of the range of pressures in the claims cannot be the basis for patentability. This is because that once that concept is realized, it would appear to require only ordinary engineering skill to find the specified range claimed.

In reaching a decision, the state of the art as of 1954–1955 must be examined since it is one of the best means by which a court can determine what would or would not have been obvious to a skilled person in the art. See Upjohn Co. v. Italian Drugs Importing Co., Inc., 190 F. Supp. 361 (D.C.S.N.Y.1961).

From their introduction in the early 1950's, polyurethane foams had developed to the point that in early 1955, people working in the polymer field generally believed that polyurethane foam would be the next great synthetic. By this time, numerous companies, both foreign and domestic, were actively seeking processes which would permit large scale commercialization of this product. See the March 1955 issue of Fortune magazine.

Goodyear, one of the largest makers of conventional latex foam, was also one of the most active of these companies, and to further its development efforts, it had taken technical "know-how" licenses from several other competing companies, among whom was the Mobay Chemical Co., the United States licensor of the Hoppe et al application. Several months after obtaining a license from Mobay, the application in suit was filed, and approximately one month thereafter Hoppe et al filed their continuation-in-part application Serial No. 527,106.

Plaintiffs' evidence showed that none of the Mobay technical personnel had mentioned or suggested that maintaining a pressure in the mixing chamber would

produce a greatly improved product. In fact, the first time that Mobay is purported to have told its licensees (including Goodyear) about this development was approximately a year after plaintiffs' application had been filed.

Since the record does not show that Goodyear told Mobay about the invention, and since there can be little doubt that the disclosure in the Hoppe et al continuation-in-part application would be a complete anticipation of plaintiffs' invention if it had been filed early enough, it is apparent that at least two sets of inventors made the same invention at approximately the same time. This fact, coupled with the fact that the evidence did not show that plaintiffs' invention solved a long standing problem in the art, (this was understandable since the art was a relatively new, rapidly expanding one, and one in which a great many companies were actively engaged in development work) tends to negate plaintiffs' contention that their invention was an unobvious advance in the art. See Audio Devices, Inc. v. Armour Research Foundation of Illinois Institute of Technology, 293 F.2d 102 (C.A.2 1961); Saul v. International Harvester Co., 170 F.Supp. 374 (D.C.E.Wis.1959), and Clapper v. Original Tractor Cab Co., Inc., 165 F. Supp. 565 (D.C.S.Ind.1958).

Of course it should also be noted that during the trial, several expert witnesses testified that plaintiffs' invention would not have been obvious to them in view of the disclosure in the Hoppe et al application. However, this opinion evidence must be balanced and tested against the above-mentioned facts. Admittedly, this case is extremely close, but for the reasons given above, the Court cannot say that the tribunals of the Patent Office were clearly erroneous in holding that the claims in suit were unpatentable over the Hoppe et al patent.

Clearly, plaintiffs' invention resulted in an improved product. However, an improved product or result does not necessarily mean that the claims to the process of making that product or pro-

ducing that result are patentable. See In re Larsen, 292 F.2d 531, 49 CCPA 711 (1961); In re Ross & Davis, 305 F.2d 878, 49 CCPA 1276 (C.C.P.A.1962), and Benger Labs., Ltd., v. R. K. Laros Co., 209 F.Supp. 639 (D.C.E.Pa.1962).

In view of the above holding, the Court deems it unnecessary to discuss the other grounds of rejection made by the tribunals of the Patent Office and counsel for defendant.

In view of what has hereinbefore set out, the Court holds that the decision of the Board of Appeals has not been shown to be in clear error, and that judgment should issue for the defendant and against the plaintiffs.

The foregoing Opinion includes Findings of Fact and Conclusions of Law.